CHUTICH, Justice.
*710 Appellant Vern Jason Mouelle was found guilty by a jury of first-degree premeditated murder and first-degree premeditated murder of an unborn child. In this direct appeal, Mouelle asserts four claims. He first contends that structural error occurred when the district court judge presided over Mouelle's jury trial after hearing a comment by defense counsel during an ex parte conversation that suggested that Mouelle might commit perjury. Mouelle next argues that his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution was violated when defense counsel disclosed client communications during the ex parte conversation with the district court judge. Mouelle further claims that the district court committed plain error in its jury instructions. Finally, he contends that the sentence to life imprisonment without the possibility of release for his conviction of first-degree murder of an unborn child was not authorized by Minnesota Statutes section 609.106 (2018).
Although the State contests the first three claims, it concedes that Mouelle's sentence for his conviction of first-degree murder of an unborn child is not authorized by Minnesota Statutes section 609.106. For the reasons explained below, we affirm Mouelle's convictions, reverse his sentence for first-degree murder of an unborn child, and remand to the district court for further sentencing proceedings consistent with this opinion.
FACTS
At about 3 p.m. on January 24, 2017, Senicha Lessman was found by her mother, bloody and unconscious on the floor of her bedroom. Lessman's mother immediately called 911, removed a bloody cloth that had been lodged in Lessman's throat, and attempted resuscitation. Emergency responders arrived and made additional efforts to save Lessman's life, but they were unsuccessful. Lessman, age 25, was 32 weeks pregnant. She and her unborn child were pronounced dead at the scene.
Lessman had been stabbed in the neck. The stab severed her external carotid artery and punctured her airway. The medical examiner determined Lessman's cause of death to be "complex homicidal violence" as a result of the blood-loss from the stab wound and asphyxiation from the cloth lodged in her airway. The cause of death for the unborn child was determined to be the death of the mother, Lessman.
The Eagan Police Department investigation immediately focused on Mouelle, the unborn child's father, because his vehicle had been seen parked in front of the Lessmans' home that same afternoon. The police searched Mouelle's vehicle that evening and found numerous items from the crime scene. These items included Lessman's mobile phone, her bloody pajama shirt and pants, Lessman's Minnesota Vikings blanket, a blood-stained towel, a green wastebasket, and a bathtub drain plug. Police also found empty packaging and a store receipt for the folding knife used to stab Lessman. The knife itself was found in a drawer in Mouelle's bedroom the next morning.
Forensic searches of Mouelle's mobile phone revealed numerous internet searches in December 2016 related to kidnapping, missing persons, and police investigation techniques. On the day of the murder, numerous other internet searches were made, including searches for: "How long would it take to die if one of your external jugular vein[s] was slit"; "How much time does it take to knock someone out with a rear naked choke"; "Can you kill a person with a rear naked choke";
*711 "How do police find and use fingerprints to catch criminals"; and "DNA forensic testing and use of DNA rape kits in cases of rape and sexual assault." Mouelle's fingerprints and DNA were found on items at the crime scene, and his DNA matched bodily fluids gathered from the autopsy conducted on Lessman's body.
Mouelle's text messages during Lessman's pregnancy showed that he did not want her to keep the baby. He frequently implored Lessman to consider an abortion and questioned her readiness for motherhood. In text messages to a friend, Mouelle declared, "I ain't having a baby with no autism bitch," and "They will not get me on child support."
Following the police investigation, a grand jury indicted Mouelle for several offenses, including first-degree premeditated murder and first-degree premeditated murder of an unborn child. See Minn. Stat. §§ 609.185(a)(1), 609.2661(1) (2018) (respectively). Pleading not guilty, Mouelle was tried by a jury in December 2017.
Immediately before opening statements, an ex parte conversation occurred between Mouelle's trial counsel ("Counsel") and the district court judge in chambers in the presence of the court reporter.[1] During the conversation, Counsel informed the court that if Mouelle chose to testify, Counsel was "going to have to ... do as well as [he could] under Whiteside ."[2] Counsel also told the court that he and Mouelle could not agree on whether Counsel should give an opening statement before the State presented its evidence. In describing the disagreement, Counsel quoted parts of a conversation that he had with Mouelle. Based on the ongoing disagreement, Counsel explained that he would request a short recess after the prosecutor's opening statement. The judge said, "I'm not going to comment any further about your conversations with your client as they are privileged. We will take a recess after the prosecution's opening statement ... and you can let me know if you're ready."
The State gave its opening statement and, as promised, the court took a brief recess. Counsel then gave an opening statement. After the State rested its case, Mouelle chose to testify. Counsel presented Mouelle's testimony in the traditional question-and-answer format.
Mouelle admitted that he was present when Lessman was killed, but testified that a secret boyfriend named "Anthony" was the culprit. He explained that Anthony and Lessman had been seeing each other, upsetting Mouelle. Mouelle admitted buying the knife and conducting the incriminating internet searches, but claimed that he was preparing to confront Anthony that day. When Anthony showed up at the Lessmans' house that afternoon, Mouelle left Anthony and Lessman inside to go to his car. Mouelle said that Anthony came out of the house to tell him that he had cut Lessman and that he needed help cleaning up the blood. Anthony assured Mouelle, however, that Lessman was okay, and Mouelle then brought the bloody items out to his vehicle.
*712 Despite Mouelle's insistence that Anthony and Lessman were secretly seeing each other in December 2016 and January 2017, only one mention of Anthony appears in any of the text messages or social network profiles gathered from Lessman's electronic devices. The lone mention of Anthony was in a text message exchange between Mouelle and Lessman in which Lessman uncharacteristically called Mouelle a racial epithet and taunted Mouelle that he was not the father of her baby.[3]
After Mouelle's testimony concluded and the parties rested, the district court instructed the jury on the law. In reading its written instructions, the district court correctly stated that "[u]nder the laws of Minnesota, a person causing the death of an unborn child, with premeditation and with the intent to kill the unborn child or another, is guilty of murder of an unborn child in the first degree." The district court, however, misread one of the written instructions when it said, "[i]f the defendant acted with premeditation or with the intent to cause the death of a person other than the unborn child, the element of premeditation and intent to cause death is satisfied." (Emphasis added.) The written instruction actually read "[i]f the defendant acted with premeditation and with the intent to cause the death of a person other than the unborn child[.]" (Emphasis added.) The jury was provided a copy of the written instructions. The district court's oral and written jury instructions also omitted a paragraph from the model jury instructions concerning first-degree murder of an unborn child, which resulted in instructions that stated, without qualification, "If you find that any element, other than premeditation, has not been proven beyond a reasonable doubt, the defendant is not guilty of this charge." Mouelle did not object to these instructions.
The jury found Mouelle guilty on all counts, and he was sentenced immediately to life-imprisonment terms, without the possibility of release, for each of the first-degree murder offenses. Mouelle requested that his sentences be imposed concurrently. The district court imposed consecutive sentences, explaining that there were "two separate and distinct lives lost, and there must be a penalty for each."
Mouelle directly appeals his conviction to this court as of right. Minn. Stat. § 632.14 (2018) ; Minn. R. Crim. P. 29.02, subd. 1(a).
ANALYSIS
I.
Mouelle first contends that a structural error occurred when Counsel's ex parte reference to Nix v. Whiteside , 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), suggested to the district court that Mouelle might commit perjury. He essentially maintains that, when the district court judge learned of his potential perjury, the judge was required, under the Code of Judicial Conduct, to recuse herself. When the judge continued to preside over the trial, Mouelle contends that a structural error occurred, requiring automatic reversal. We conclude that, because Mouelle cannot establish that the circumstances of this trial raised even the appearance of judicial partiality against him, much less actual bias, no error, structural or otherwise, occurred.
A judge may not preside over any criminal proceeding if she is disqualified from doing so under the Code of *713 Judicial Conduct. Minn. R. Crim. P. 26.03, subd. 14(3). Whether a judge has violated the Code is a question of law that we review de novo. State v. Dorsey , 701 N.W.2d 238, 246 (Minn. 2005). Under the Code, a judge must disqualify herself from "any proceeding in which the judge's impartiality might reasonably be questioned." Minn. R. Jud. Conduct 2.11. Impartiality requires absence of "actual bias against the defendant or interest in the outcome of his particular case." State v. Munt , 831 N.W.2d 569, 580 (Minn. 2013) (quoting McKenzie v. State , 583 N.W.2d 744, 747 (Minn. 1998) ).
In deciding whether disqualification is required, the relevant question is "whether a reasonable examiner, with full knowledge of the facts and circumstances, would question the judge's impartiality." In re Jacobs , 802 N.W.2d 748, 753 (Minn. 2011). But "[t]he mere fact that a party declares a judge partial does not in itself generate a reasonable question as to the judge's impartiality." State v. Schlienz , 774 N.W.2d 361, 366 (Minn. 2009) (internal quotation marks omitted) (citation omitted). Moreover, we have never held that reversal is automatic when a party succeeds in raising a reasonable question about the judge's impartiality. Rather, we have applied a three-factor test to determine whether the error requires reversal. Powell v. Anderson , 660 N.W.2d 107, 120-21 (Minn. 2003) (adopting the test announced in Liljeberg v. Health Servs. Acquisition Corp. , 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) ).
To evaluate whether a "reasonable examiner, with full knowledge of the facts and circumstances, would question the judge's impartiality" we take the perspective of "an objective, unbiased layperson." Jacobs , 802 N.W.2d at 753. We further presume that "judges are capable of setting aside collateral knowledge they possess and are able to 'approach every aspect of each case with a neutral and objective disposition.' " Dorsey , 701 N.W.2d at 247 (quoting Liteky v. United States , 510 U.S. 540, 561-62, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ).
Mouelle contends that Counsel's disclosure "tainted the judge who was tasked with deciding evidentiary issues." The unspoken assumption underlying this contention is that a reasonable examiner loses confidence in a district court's impartiality whenever the court learns information that is prejudicial to the defendant. This theory, however, does not overcome the presumption that district courts set aside collateral knowledge and "approach every aspect of each case with a neutral and objective disposition." Id . A district court judge does not become partial, and thus disqualified from presiding over a criminal trial, simply because she has knowledge of information that reflects negatively on a defendant. Cf. id. at 253 (explaining that it was "not the fact that [the judge] knew" certain facts that deprived the defendant of an impartial fact finder). In criminal proceedings, reviewing evidence that is potentially prejudicial to the defendant is a routine, and in fact essential, function of a district court judge.
In a typical criminal case, the district court judge must consider pretrial motions that challenge items of evidence that may reflect adversely on the defendant. A motion to exclude a defendant's prior criminal history from presentation at trial, for instance, often involves highly prejudicial evidence. Sometimes, the challenged evidence is even incriminating-as with disputes concerning the admission of a defendant's recorded confession under the *714 Miranda rule.[4] Yet in these circumstances we do not doubt the district court judge's ability to set aside her knowledge of prejudicial information and "approach every aspect of each case with a neutral and objective disposition." Dorsey , 701 N.W.2d at 247 (internal quotation marks omitted) (citation omitted). Instead, we presume that the district court is able to set aside knowledge prejudicial to the defendant because doing so is necessary to the proper discharge of her duties. See Munt , 831 N.W.2d at 580.
Applying these principles here, we conclude that an objective, unbiased layperson with full knowledge of the facts and circumstances would not question the district court's impartiality. After the ex parte conversation ended, Counsel's concerns were never again mentioned during the remainder of the jury trial. Critically, the jury-the fact finder here-was never exposed to the concerns about Mouelle's testimony that Counsel raised during the ex parte conversation.[5] Moreover, Counsel's decision to present Mouelle's testimony in the usual question-and-answer format suggests that Counsel's Whiteside concerns, as well as his disagreement with Mouelle, had been resolved before Mouelle testified. Certainly nothing in the manner that Mouelle's testimony was presented suggested to the jury that anything was amiss. And, as discussed in more detail below, the record does not reflect any behavior by the district court that would lead a reasonable examiner, with full knowledge of the facts and circumstances, to question the judge's impartiality. Consequently, we conclude that Mouelle failed to establish that the Code of Judicial Conduct required the district court judge to recuse herself. Because Mouelle failed to show even the appearance of partiality, we hold that no error occurred, structural or otherwise, when the district court judge presided over his jury trial.[6]
II.
Mouelle next asserts that his right to effective assistance of counsel under the Sixth Amendment was violated. According to Mouelle, Counsel's performance during the ex parte conversation with the district court fell below an objective standard of reasonableness because it violated the ethical duties of loyalty and confidentiality that Counsel owed Mouelle. He also argues that the deficiencies in Counsel's performance *715 were prejudicial because they compromised the fairness of the proceedings.
The Sixth Amendment provides to criminal defendants the right to the assistance of counsel at trial. State v. Rhodes , 657 N.W.2d 823, 842 (Minn. 2003) (citing Strickland v. Washington , 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ). This right includes the guarantee that counsel's assistance be "effective." Dukes v. State , 621 N.W.2d 246, 252 (Minn. 2001) (citing Strickland , 466 U.S. at 686, 104 S.Ct. 2052 ). The purpose of the right to effective assistance of counsel is "to ensure that criminal defendants receive a fair trial." Strickland , 466 U.S. at 689, 104 S.Ct. 2052. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. 2052.
Mouelle's ineffective-assistance-of-counsel claim is governed by the two-pronged test set forth in Strickland , 466 U.S. at 687, 104 S.Ct. 2052. The first prong requires a showing that "counsel's representation fell below an objective standard of reasonableness." State v. Lahue , 585 N.W.2d 785, 789 (Minn. 1998). We assess an attorney's performance "on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland , 466 U.S. at 690, 104 S.Ct. 2052. The second prong requires Mouelle to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland , 466 U.S. at 694, 104 S.Ct. 2052. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." Id .
Application of the Strickland test involves a mixed question of law and fact, which we review de novo. State v. Mosley , 895 N.W.2d 585, 591 (Minn. 2017). If a claim fails to satisfy one of the Strickland requirements, we need not consider the other. Pearson v. State , 891 N.W.2d 590, 600 (Minn. 2017). Because we conclude that Mouelle failed to satisfy Strickland 's second requirement, prejudice, we decline to consider the first prong.[7]
To support his theory that the fairness of the proceedings was compromised when Counsel raised the potential perjury issue to the presiding judge, Mouelle relies upon the Ninth Circuit's opinion in Lowery v. Cardwell , 575 F.2d 727 (9th Cir. 1978). In Lowery , defendant's counsel moved to withdraw in the midst of defendant's testimony because counsel believed that the defendant was lying. Id. at 729. The court held that the motion for withdrawal violated the defendant's constitutional right to due process because it was an "unequivocal announcement" to the fact finder that the *716 defendant's testimony was untrue. Id . at 730.
Mouelle's reliance on Lowery is misplaced. Critically, Lowery concerned a bench trial, not a jury trial. Id. The Lowery court's primary concern was not that the defendant's counsel signaled his belief to the presiding judge that the defendant would commit perjury, but that the presiding judge received this information while sitting as the trier of fact. The Lowery court concluded that "[b]y calling for a judicial decision upon counsel's motion in a case in which the judge served as fact finder , this conduct affirmatively and emphatically called the attention of the fact finder to the problem counsel was facing." Id. at 731 (emphasis added).
Here, no similar problem was called to the attention of the fact finder. The record shows that Mouelle had a full and fair opportunity to present his testimony to the jury. Mouelle further acknowledges that Counsel presented his testimony in the typical question-and-answer format. Nothing in the record shows that the jury, as the finder of fact, was even aware of, or affected by, any doubts that Counsel initially harbored about Mouelle's credibility.[8]
The Ninth Circuit's decision in Lowery is, in any event, inapposite because it turned on the defendant's constitutional right to due process. Here, Mouelle invokes his constitutional rights under the Sixth Amendment. He asks us to discount this difference as a mere historical anomaly because Lowery predates the prejudice framework announced in Strickland . We decline to speculate about how Lowery would have been litigated in a post- Strickland setting. The Lowery court refused to make any prejudice inquiry, stating that "[w]hether a just result nevertheless was reached would be a futile and irrelevant inquiry." Id. at 731. Mouelle's claim under the Sixth Amendment, by contrast, specifically requires a prejudice inquiry. Given this key distinction, Lowery has little, if any, further bearing on a Sixth Amendment claim under Strickland .
Mouelle contends that he was prejudiced by Counsel's disclosures because the district court judge was required to make evidentiary rulings throughout the trial. But a district court judge's adverse rulings, without more, are not enough for a criminal defendant to demonstrate that the judge was biased against him. Greer v. State , 673 N.W.2d 151, 157 (Minn. 2004). The district court judge's denial of Mouelle's motion for a judgment of acquittal, for example, is beyond challenge because the State presented more than enough evidence to create a question of fact for the jury's determination. See, e.g. , State v. Slaughter , 691 N.W.2d 70, 74-75 (Minn. 2005) (describing the standard to prevail on a motion for judgment of acquittal). Moreover, the record reveals that the district court judge made numerous evidentiary *717 rulings in Mouelle's favor throughout the trial.
Nothing in the record suggests that the jury's guilty verdicts were affected by the errors that Mouelle alleges that Counsel committed during the ex parte conversation with the district court. Accordingly, Mouelle has not shown that the alleged errors "actually had an adverse effect" on the outcome of the case; his claim of ineffective assistance of counsel therefore fails. Strickland , 466 U.S. at 693, 104 S.Ct. 2052.
III.
Mouelle's third claim challenges the district court's jury instructions for the charge for first-degree premeditated murder of an unborn child. He seeks reversal of his conviction because, he contends, the instructions "negated" the requirement that the jury find the element of premeditation proven beyond a reasonable doubt.
A person is guilty of murder of an unborn child in the first degree if he commits an act that "causes the death of an unborn child with premeditation and with intent to effect the death of the unborn child or of another." Minn. Stat. § 609.2661(1) (emphasis added). To convict Mouelle under this provision, the jury was required to find that (1) he caused the death of Lessman's unborn child, (2) he acted with premeditation, and (3) he acted with the intent to cause the unborn child's death or with the intent to cause the death of another. Id.
Mouelle contends that the district court's instructions eliminated the State's requirement to prove the premeditation element beyond a reasonable doubt in two ways. First, the district court judge misread the written instructions when she told the jury that "[i]f the defendant acted with premeditation or with the intent to cause the death of a person other than the unborn child, the element of premeditation and intent to cause death is satisfied."[9] (Emphasis added.)
Second, the instructions incorrectly omitted a paragraph from the standard jury instructions. The standard jury instruction defining the elements of first-degree premeditated murder of an unborn child contains the following language, with the omitted paragraph italicized:
If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty of this charge.
If you have a reasonable doubt there was premeditation, but you find all the other elements have been proven, the defendant is guilty of murder in the second degree. The crime of murder in the second degree differs from murder in the first degree only in that the killing was done with intent to kill, but not with premeditation .
If you find that any element other than premeditation has not been proven beyond a reasonable doubt, the defendant is not guilty of this charge.
10 Minn. Dist. Judges Ass'n, Minnesota Practice-Jury Instruction Guides, Criminal , CRIMJIG 11.17 (6th ed. 2015) (emphasis added). The omission of this paragraph in the district court's written and oral jury instructions linked the sentences immediately preceding and following the omitted paragraph and implied that premeditation was not a required element of the crime.
*718 Mouelle did not object to either alleged error in the district court. When a party fails to object to a jury instruction, the forfeiture doctrine generally precludes appellate relief. State v. Webster , 894 N.W.2d 782, 786 (Minn. 2017). An appellate court may consider a forfeited issue, however, when the defendant establishes plain error. State v. Milton , 821 N.W.2d 789, 805 (Minn. 2012). To establish plain error, Mouelle must show "(1) an error, (2) that was plain, and (3) that affected the defendant's substantial rights." Webster , 894 N.W.2d at 786. If the defendant fails to establish any of the requirements of the plain-error doctrine, we need not consider the others. Id. On the other hand, if the defendant establishes the three requirements, we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.
Here, we need not consider the first two requirements of the plain-error doctrine because Mouelle failed to establish that the alleged errors affected his substantial rights. An omission of an element of the crime charged is not always prejudicial. State v. Watkins , 840 N.W.2d 21, 28 (Minn. 2013). To determine if an omission affected a defendant's substantial rights, we consider, among other factors, whether: "(1) the defendant contested the omitted element and submitted evidence to support a contrary finding, (2) the State submitted overwhelming evidence to prove that element, and (3) the jury's verdict nonetheless encompassed a finding on that element." Id. at 29.
The jury's guilty verdict on the first-degree murder charge for Lessman's death is determinative because it required a finding of premeditation. See Minn. Stat. § 609.185(a)(1) (stating that first-degree murder requires a finding that the defendant acted "with premeditation and with intent to effect the death of the person or of another."). Premeditation means "to consider, plan or prepare for, or determine to commit the act referred to prior to its commission." Minn. Stat. § 609.18 (2018). The jury's guilty verdict for Lessman's murder "encompassed" a finding of premeditation for the murder of Lessman's unborn child because the premeditated acts that caused Lessman's death were the same acts that caused the death of the unborn child. Watkins , 840 N.W.2d at 29. In other words, the acts that caused the unborn child's death were no less considered, planned, or prepared for than the acts that caused Lessman's death. They were one and the same.
The State, furthermore, produced overwhelming evidence that Mouelle premeditated the murders of Lessman and the unborn child. The State's evidence included extensive mobile phone internet browser history related to missing persons and police investigation techniques. The State produced numerous internet searches, from the very day of the murder, about the exact methods used to kill Lessman. The State also showed that Mouelle bought the murder weapon on his way to Lessman's home. Numerous text messages were presented that showed Mouelle's failed efforts to convince Lessman to have an abortion or to put the baby up for adoption. All of this evidence proves that Mouelle planned to murder Lessman, and that his plans were motivated by his desire to avoid any obligations for the unborn child. Because Mouelle failed to establish that the alleged errors affected his substantial rights, his challenges to the jury instructions are unavailing.
IV.
Mouelle's final claim concerns his sentence for the conviction for first-degree premeditated murder of an unborn child.
*719 He asserts that section 609.106 does not allow a sentence of life imprisonment without possibility of release for a conviction of first-degree murder of an unborn child. The State agrees.
Whether a sentence is authorized by a Minnesota statute is a question of law that we review de novo. State v. Williams , 771 N.W.2d 514, 520 (Minn. 2009). Crimes that are punishable by life imprisonment without the possibility of release are listed in the heinous crimes statute, section 609.106. Jackson v. State , 883 N.W.2d 272, 278 (Minn. 2016). The list does not include the offense under section 609.2661, murder of an unborn child in the first degree. See Minn. Stat. § 609.106. Based on the plain language of section 609.106, we conclude that it does not authorize a sentence of life imprisonment without the possibility of release for a conviction of first-degree murder of an unborn child. We therefore reverse the sentence imposed for the conviction under section 609.2661 and remand to the district court for further sentencing proceedings consistent with our opinion.
CONCLUSION
For the forgoing reasons, we affirm Mouelle's convictions, reverse the sentence imposed for the conviction of first-degree premeditated murder of an unborn child, and remand for further proceedings consistent with our opinion.
Affirmed in part, reversed in part, and remanded.

Before the ex parte conversation took place, the State had notice and gave Counsel permission to have the conversation. A portion of the ex parte conversation occurred off the record.

Counsel was referring to the United States Supreme Court decision in Nix v. Whiteside , 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). In Whiteside , the Court held that it was not ineffective assistance of counsel for a lawyer in a criminal case to dissuade his client from committing perjury by threatening to withdraw from representation and to report the perjury to the presiding judge. Id. at 170-71, 106 S.Ct. 988.

At trial, the State's theory was that Mouelle had taken Lessman's phone and created this fictional exchange.

In Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that a defendant's statements during a police interrogation are inadmissible at trial unless he is advised of his right to counsel and right against self-incrimination before the police questioning begins. Id. at 467-72, 86 S.Ct. 1602.

Mouelle argues, citing Butler v. United States , 414 A.2d 844 (D.C. Cir. 1980), that the neutrality of a judge is compromised when the judge learns that the defendant might commit perjury. But Butler does not support this broad proposition. In Butler , the defendant's attorney told the judge, who was sitting as the trier of fact, that the government's case could be proved beyond a reasonable doubt and that the defendant intended to commit perjury by testifying that he had not possessed the pistol when he had previously told his attorney that he had possessed the pistol. Id . at 845, 848, 852. Based on these specific facts, the Butler court said, "It is difficult to imagine how the neutrality of a judge could remain free from compromise." Id . at 852. Because Butler involved a bench trial and a concession from defense counsel that the government could prove its case, we conclude that it is distinguishable.

Because the facts and circumstances of this case do not create an appearance of impartiality, they do not satisfy the more stringent test for a due-process violation, which requires an "unacceptable risk of actual bias." Williams v. Pennsylvania , --- U.S. ----, 136 S.Ct. 1899, 1908, 195 L.Ed.2d 132 (2016).

Although we do not analyze the objective reasonableness of Counsel's conduct here, we note the importance of an attorney's duties of loyalty and confidentiality to a client. See Minn. R. Prof. Conduct 1.6 (MRPC). To be sure, these duties exist in some tension with the attorney's duty of candor to the court, which prohibits an attorney from "knowingly" presenting false evidence or assisting in the commission of a crime such as perjury. Rule 3.3, MRPC. See also Rule 1.6(b)(9), MRPC (allowing disclosure of client communications when an attorney "reasonably believes the disclosure is necessary to comply with other law or a court order"). In balancing these competing duties, however, attorneys must act with cautious deliberation before disclosing privileged client communications. Disclosure of confidential client communications should only be made if needed to avoid "knowingly ... offer[ing] false evidence" or "assist[ing] in a course of conduct which defense counsel knows to be criminal or fraudulent." ABA Criminal Justice Standards for the Defense Function, §§ 4-1.4(b); 4-3.8(b).

Mouelle also cites the Eighth Circuit's opinion in United States v. Long , 857 F.2d 436 (8th Cir. 1988). In Long , the Eighth Circuit warned that the possibility of prejudice arising from a trial judge's knowledge of potential perjury by a defendant is not always inoculated by the presence of a jury. The Long court noted that "[e]ven in a jury trial, where the judge does not sit as the finder of fact, the judge will sentence the defendant, and such a disclosure creates 'significant risks of unfair prejudice' to the defendant." Id . at 446 (quoting Holloway v. Arkansas , 435 U.S. 475, 487 n.11, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) ). But this concern is not warranted here because Mouelle's conviction for first-degree murder carried a mandatory sentence of life imprisonment without the possibility of release. See Minn. Stat. § 609.106 (stating that a conviction for murder in the first degree carries a mandatory life sentence). Under these circumstances, the district court had no sentencing discretion.

The written instructions correctly mirrored the language of the statute, stating that the charge required the jury to find that Mouelle acted "with premeditation and with the intent" to cause the death. Minn. Stat. § 609.2661(1) (emphasis added). The jury had these written instructions with it during deliberations.