STATE OF MINNESOTA

IN SUPREME COURT

A23-1381

Hennepin County                                                          Hennesy, J.

Berry Alexander Davis,

        Appellant,

vs.                                                                     Filed: January 8, 2025
                                                                        Office of Appellate Courts
State of Minnesota,

        Respondent.

————————————————

Berry Alexander Davis, Bayport, Minnesota, pro se.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

————————————————

S Y L L A B U S

The district court did not abuse its discretion when it summarily denied appellant's postconviction petition because, even if appellant proved the facts alleged in the petition by a preponderance of the evidence at an evidentiary hearing, he would not be entitled to relief as a matter of law.

Affirmed.

Considered and decided by the court without oral argument.

1

OPINION

HENNESY, Justice.

In this case we are asked to determine whether the district court abused its discretion when it summarily denied appellant Berry Alexander Davis's petition for postconviction relief without holding an evidentiary hearing. In his petition, filed without representation by counsel, Davis claimed his sentence was unconstitutional and his trial and appellate counsel were ineffective for not raising several specific claims. We conclude that the district court did not abuse its discretion because, even if the facts alleged in the petition were proven at an evidentiary hearing, Davis's claims fail on their merits as a matter of law. We therefore affirm.

**FACTS**

This appeal arises from the kidnapping and murder of Monique Baugh and the attempted murder of her boyfriend, Jon, on New Year's Eve in 2019. Baugh was abducted at a house in Maple Grove, placed in the back of a U-Haul truck, and fatally shot in a North Minneapolis alley. The State charged appellant, Berry Alexander Davis, and a codefendant, Cedric Lamont Berry, with several offenses, including first-degree premeditated murder, Minn. Stat. § 609.185(a)(1) (2024), attempted first-degree premeditated murder, Minn. Stat. §§ 609.17, subd. 1 (2024), 609.185(a)(1), and kidnapping, Minn. Stat. § 609.25, subd. 1(3) (2024). A detailed description of the underlying facts and procedural history can be found in our opinions resolving Davis's and Berry's direct appeals. *State v. Davis*, 982 N.W.2d 716 (Minn. 2022); *State v. Berry*, 982 N.W.2d 746 (Minn. 2022). We discuss here only those facts relevant to this appeal.

2

Before trial, the State moved to join Davis's and Berry's cases. Davis and Berry objected. The district court granted the State's motion. At trial, the State called Detective Briana Johnson to testify about the relationship between Davis and Berry—specifically that Davis, Berry, and Lyndon Wiggins, a musician with whom Jon worked, sold drugs together. The State's theory was that Wiggins had a falling out with Jon, and Davis and Berry attacked Jon on Wiggins's behalf. At trial, Detective Johnson testified that Davis, Berry, and Wiggins worked together in a drug selling operation and Berry agreed to act as a police informant. The information Berry provided led to the discovery of "a very large amount of narcotics." On direct examination, Detective Johnson testified that Davis was "associated with or charged with the possession of those narcotics." The district court instructed the jury to use this information for the limited purpose of establishing the relationship between Davis and Berry.

Berry called five witnesses and testified in his own defense. Davis waived his right to testify on the record. In questioning Davis about the waiver, defense counsel asked, "[i]s it your choice to exercise your right to not testify . . . [and] waive your right to testify . . . ?" Davis responded, "[a]t this moment, yes." The district court then engaged in the following colloquy with Davis:

> THE COURT:      Mr. Davis, I'm going to address you directly because the decision whether or not to testify is entirely yours. This is one of those decisions your attorney can't make for you. They make a lot of decisions—who to call, what questions to ask—but they cannot make the decision for you whether or not to testify. That is entirely your decision. What I mean by that is they may advise you to do one thing, you can do the exact opposite or you can follow their advice. It's pretty much up to you, and I

3

>          don't want to know what the advice is just that you can
>          disregard it and say, I'm going to do the opposite of what
>          you say, testify or not.  So is this your personal decision
>          to choose not to testify at this point?

DAVIS:          At this point, yes.

The district court accepted Davis's waiver.  Defense counsel did not call any additional witnesses.

The jury found Davis and Berry guilty on all counts.  The district court convicted Davis of first-degree premeditated murder, attempted first-degree murder, and kidnapping, and sentenced him to life in prison without the possibility of release under Minn. Stat. § 609.106, subd 2 (2022).

On direct appeal, Davis's appellate counsel argued that the district court erred in joining Davis's and Berry's trials.  *Davis*, 982 N.W.2d at 723.  We disagreed.  Appellate counsel also contended that Detective Johnson's testimony about Davis's drug activity was inadmissible and prejudicial, but we rejected that argument because the district court instructed the jury to limit its use of this testimony.  *Id.* at 725–26.  Davis had also filed a pro se supplemental brief raising several claims, including that his sentence of life without the possibility of release violated his constitutional right to a sentencing jury under *Blakely v. Washington*, 542 U.S. 296, 301 (2004).  *Davis*, 982 N.W.2d at 728.  Davis further argued that appellate counsel was ineffective for not raising the claims Davis raised in his pro se supplemental brief, including the *Blakely* argument.  *Id.* at 729.  We affirmed his conviction and sentence, concluding that all the claims Davis and his appellate counsel raised lacked merit.  *Id.*

Subsequently, Davis filed a postconviction petition. In his petition, he alleged that trial counsel provided ineffective assistance by failing to file a motion to remove the district court judge, failing to investigate potential eyewitnesses (specifically a "woman in black" seen running near the scene in security footage after the murder), failing to call any witnesses on Davis's behalf, and refusing to allow Davis to testify.[1] Davis also alleged that the imposition of a life sentence without the possibility of release violated both his *Blakely* right to a sentencing jury and the Double Jeopardy Clauses of the United States and Minnesota Constitutions. Finally, Davis alleged that appellate counsel provided ineffective assistance by failing to raise these claims and failing to "challenge the testimony" of Detective Johnson.

The district court concluded that even if Davis proved the facts alleged in his postconviction relief petition by a preponderance of the evidence at an evidentiary hearing he would not be entitled to relief because his claims failed on their merits as a matter of law. In the alternative, the district court concluded that all the claims were barred under the rule announced in *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."). As a result,

---

[1] In his postconviction petition, Davis also raised two additional claims. First, he alleged trial counsel provided ineffective assistance by allowing the district court to give the jury a "no adverse inference" instruction regarding his decision not to testify. Second, Davis alleged that appellate counsel was ineffective for failing to raise a sufficiency of the evidence question. We conclude that Davis forfeited review of these claims when he failed to provide us with any argument or citation to legal authority to support them. *State v. Mrozinski*, 971 N.W.2d 233, 237 n.2 (Minn. 2022) (explaining that issues raised without argument or citation to legal authority are forfeited).

the district court denied Davis's postconviction petition without holding an evidentiary hearing. Davis appeals the district court's decision.

**ANALYSIS**

"A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity." *Hummel v. State*, 617 N.W.2d 561, 563 (Minn. 2000). "Unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief, the court shall promptly set an early hearing on the petition and response thereto . . . ." Minn. Stat. § 590.04, subd. 1 (2024). A district court may summarily deny a petition without holding an evidentiary hearing when "the petitioner alleges facts that, if true, are legally insufficient to grant the requested relief." *State v. Sardina-Padilla*, 7 N.W.3d 585, 602–03 (Minn. 2024); *Reese v. State*, 992 N.W.2d 373, 378 (Minn. 2023); *see also Bobo v. State*, 820 N.W.2d 511, 517 (Minn. 2012). In deciding whether to summarily deny a petition, the postconviction court must presume that the facts alleged in the petition are true. *Bobo*, 820 N.W.2d at 517. When considering a district court's decision to summarily deny a postconviction petition without holding an evidentiary hearing, we review for abuse of discretion. *Erickson v. State*, 842 N.W.2d 314, 318 (Minn. 2014). A district court abuses its discretion when it has "exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Reed v. State*, 793 N.W.2d 725, 729 (Minn. 2010). We review de novo the denial of postconviction relief based on a claim of ineffective assistance of counsel. *Sardina-Padilla*, 7 N.W.3d at 602.

6

A.

In his postconviction petition, Davis alleged two claims related to the constitutionality of his life sentence without the possibility of release. First, Davis alleged his sentence violated his Sixth Amendment right to a sentencing jury because the district court relied on facts not found by the jury when it sentenced him to life without the possibility of release for first-degree premeditated murder in violation of *Blakely*, 542 U.S. at 301, 305 (holding that facts increasing the penalty for a crime beyond a statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.). Second, Davis alleged that his sentence violated the Double Jeopardy Clauses of the United States and Minnesota Constitutions, because it resulted in multiple punishments for the same crime. According to Davis, his conviction for murder in the first degree required the court to sentence him to life in prison, so his sentence under the heinous-crimes statute to "life in prison without the possibility of release" added an additional punishment.

The district court concluded that Davis's sentencing claims lacked merit, noting that, because Davis raised the *Blakely* challenge to his sentence on direct appeal and we rejected it, that claim was barred under *Knaffla*. The district court did not conduct an analysis of Davis's double jeopardy claims. For the reasons outlined below, we conclude that the district court did not abuse its discretion when it summarily denied Davis's sentencing claims. Even if the facts alleged in the petition were proven by a preponderance of the

evidence at an evidentiary hearing, Davis would not be entitled to relief because his sentencing claims fail on their merits as a matter of law.[2]

First, the district court did not violate the *Blakely* rule requiring a jury to find aggravating facts when it sentenced Davis to life without the possibility of release. In *Mckenzie v. State*, we held that a district court does not violate *Blakely* when it imposes a life sentence without the possibility of release after a jury finds a defendant guilty of first-degree premeditated murder. 713 N.W.2d 840, 842 (Minn. 2006). Relying on *Mckenzie* in Davis's direct appeal, we concluded that he was not entitled to relief based on his *Blakely* claim. *Davis*, 982 N.W.2d at 728. That analysis still applies. Consequently, the district court did not abuse its discretion when it summarily denied Davis's *Blakley* claim without an evidentiary hearing.

Second, Davis's sentence does not violate the Double Jeopardy Clauses of the United States and Minnesota Constitutions. Davis claims that his sentence violates both because the district court subjected him to multiple punishments for the single offense of first-degree murder. Davis argues that the district court sentenced him twice for the same offense because it sentenced him to "life in prison without the possibility of release" under the "heinous-crimes" statute, Minn. Stat. § 609.106, subd. 2, while the first-degree murder statute requires only a "mandatory life sentence." Davis claims that he received a life

---

[2]    The district court's denial of the sentencing claims without analysis does not preclude us from reaching this conclusion. *See Petersen v. State*, 937 N.W.2d 136, 143–45 (Minn. 2019) (affirming district court's decision to summarily deny a postconviction petition even though it did not directly consider an argument because the argument lacked merit).

8

sentence under the murder statute and was impermissibly sentenced again by the addition of "without the possibility of release" under Minn. Stat. § 609.106, subd. 2.

The Double Jeopardy Clauses of the United States and Minnesota Constitutions provide that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Minn. Const. art. I, § 7. The clauses prohibit multiple punishments for the same offense. *State v. Humes*, 581 N.W.2d 317, 320 (Minn. 1998). In *Hannon v. State*, 957 N.W.2d 425, 433 (Minn. 2021), we considered the interplay between the subdivision of the first-degree murder statute prohibiting murder in the course of kidnapping, Minn. Stat. § 609.185(a)(3) (2022), and the heinous-crimes statute, Minn. Stat. § 609.106, subd. 2, concluding that the defendant "was sentenced on only one offense" when he was convicted under the first statute and sentenced under the second. Although Davis's conviction was for premeditated murder under Minn. Stat. § 609.185(a)(1), as opposed to murder in the course of kidnapping, under section 609.185(a)(3), our analysis in *Hannon* applies here. The heinous-crimes statute lists the crimes which require the court to sentence a defendant to life without the possibility of release. Murder in the course of a kidnapping is listed alongside first-degree premeditated murder, the crime for which the district court sentenced Davis. Davis provides no reason why we should interpret the statute differently in this circumstance. When the district court convicted Davis under section 609.185(a)(1) and sentenced him under section 609.106, subd. 2, Davis was convicted of one offense for which he received one sentence. The district court did not abuse its discretion in summarily denying Davis's double jeopardy claim.

9

B.

In addition to his sentencing claims, Davis's postconviction petition alleged several claims of ineffective assistance of trial counsel. To be entitled to an evidentiary hearing on his postconviction claim of ineffective assistance of counsel, Davis was required to allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test announced in *Strickland*. *See Bobo*, 820 N.W.2d at 516 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Zumberge v. State*, 937 N.W.2d 406, 413 (Minn. 2019).

Under the *Strickland* test Davis had to show, first, "that counsel's representation fell below an objective standard of reasonableness." *See Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007) (quoting *Strickland*, 466 U.S. at 687–88 (internal quotation marks omitted)). To be objectively reasonable under the first prong means counsel was "exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Gassler*, 505 N.W.2d 62, 70 (Minn. 1993). We presume that counsel's representation is reasonable. *Schneider v. State*, 725 N.W.2d 516, 521 (Minn. 2007). If Davis failed to meet his burden on the first prong, the district court was not required to consider the second prong, which requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Peltier v. State* 946 N.W.2d 369, 372 (Minn. 2020) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted)).

1.

Davis first argues that his trial counsel provided deficient representation by failing to move for disqualification of the district court judge. In his postconviction petition, Davis alleged that the district court judge was biased because the judge joined Davis's and Berry's trials and permitted Detective Johnson to testify. Davis argued that trial counsel's failure to file a motion to remove the judge fell below an objective standard of reasonableness. We conclude that the district court did not abuse its discretion when it summarily denied this claim.

"Cause for removal [of a judge] exists if the judge would be disqualified under the Code of Judicial Conduct." *In re Jacobs*, 802 N.W.2d 748, 751 (Minn. 2011) (citing Minn. R. Crim. P. 26.03, subd. 14(3)). The "standard for determining whether a judge must be disqualified is 'whether an objective examination of the facts and circumstances would cause a *reasonable examiner* to question the judge's impartiality.' " *Id.* at 752 (emphasis in original) (citation omitted). "Impartiality requires absence of actual bias against the defendant or interest in the outcome of his particular case." *State v. Reek*, 942 N.W.2d 148, 156 (Minn. 2020) (citation omitted) (internal quotation marks omitted). "The mere fact that a party declares a judge partial does not in itself generate a reasonable question as to the judge's impartiality." *State v. Schlienz*, 774 N.W.2d 361, 366 (Minn. 2009). "[A] district court judge's adverse rulings, without more, are not enough for a criminal defendant to demonstrate that the judge was biased against him." *State v. Mouelle*, 922 N.W.2d 706, 716 (Minn. 2019).

The district court's order granting the State's request for joinder of Davis's case with Berry's is not enough to demonstrate bias against Davis. Furthermore, on direct appeal, we considered whether the district court erred in granting joinder and determined it did not. Similarly, nothing in the district court's order allowing Detective Johnson's testimony suggests that the district court was biased against Davis. Davis claims that the district court allowed Detective Johnson to testify about the relationship between Davis and Berry even though the court acknowledged the testimony was irrelevant. This assertion is not supported by the record; the district court specifically found that the testimony was relevant. The court stated on the record "[w]hat is relevant is that the two defendants had a relationship . . . ." The district court acknowledged, however, that any evidence of the hierarchy within the drug dealing operation was irrelevant, and for that reason provided a limiting instruction.

Because adverse rulings *alone* are insufficient to support a motion to disqualify a district court judge, Davis's claim that trial counsel's performance fell below an objective standard of reasonableness when he did not file a motion to remove the district court judge fails as a matter of law. Consequently, the district court did not abuse its discretion when it summarily denied this claim without an evidentiary hearing.[3]

---

[3] Davis claims that trial counsel was ineffective for failing to "challenge [the] testimony from Detective Johnson who described Davis as someone who was charged with possession of a large amount of narcotics . . . ." It is unclear exactly what Davis means in his brief by "failure to challenge." If Davis means that trial counsel should have moved for the judge to recuse himself for allowing this testimony, the claim fails for the reasons stated above. If Davis means that trial counsel should have objected to the testimony of Detective Johnson, this claim also fails. We determined on direct appeal that Detective

2.

Davis further alleges that trial counsel's performance fell below an objective standard of reasonableness when counsel failed to investigate a potential eyewitness. Specifically, he argues that trial counsel failed to investigate a "woman in black" mentioned by a trial witness who saw the woman run from the scene after the shooting. Davis notes that the trial witness testified there was video footage of this. Davis speculates this unknown woman "could have been running for [her] life because she witnessed the shooting of [] Baugh, thus, knowing what the shooter looked like[, or she] could have been the shooter."

"[N]ot every ineffective assistance of counsel claim will require an evidentiary hearing." *State v. Rhodes*, 627 N.W.2d 74, 88 (Minn. 2001). To warrant an evidentiary hearing, a postconviction petition must allege "more than argumentative assertions without factual support." *Beltowski v. State*, 183 N.W.2d 563, 564 (Minn. 1971). "We have generally required that [a] petitioner factually support his claim with admissible evidence." *Chambers v. State*, 769 N.W.2d 762, 764 (Minn. 2009). In *Rhodes*, for example, we held that a defendant was entitled to an evidentiary hearing based on counsel's failure to conduct a thorough investigation when the defendant provided affidavits from witnesses his attorney had allegedly failed to contact who contradicted the State's evidence. *Rhodes*, 627 N.W.2d at 88. Here, by contrast, Davis has provided no admissible evidence containing factual support for his claim. Davis did not submit any affidavits in support of

Johnson's testimony was not prejudicial given the limiting instruction the district court provided. *Davis*, 982 N.W.2d at 725–26.

13

his claim. Nor did he allege any facts in his postconviction petition—beyond speculation—about what information the woman in black would have provided about the shooting. We therefore conclude that, even if Davis proved by a preponderance of the evidence the facts alleged in his postconviction petition—that a woman in black ran from the alley where the body was discovered after the shooting—he would not be entitled to any relief. Because Davis does not provide any factual support for his claim, the claim fails.

Further, the extent of counsel's investigation often falls within the realm of trial strategy. *See State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986). "Typically, an attorney's decisions regarding which witnesses to interview constitute trial strategy that appellate courts will not second-guess." *State v. Whitson*, 876 N.W.2d 297, 306 (Minn. 2016). "However, when counsel's conduct represents an inexplicable abandonment of investigation of a key point of the case, rather than 'a course of action that trial counsel considered and rejected,' such conduct does not amount to trial strategy." *Id.* (quoting *State v. Nicks*, 831 N.W.2d 493, 506–07 (Minn. 2013)). Here, Davis has not alleged any facts showing how his attorney's performance was deficient. Because Davis has provided no specific facts about this alleged witness, he cannot show that his attorney's decision amounted to ineffective assistance rather than unreviewable trial strategy. In other words, even if the allegations in his petition were proven by a fair preponderance of the evidence, they do not show that his attorney inexplicably abandoned investigating a key point of the case, rather than having considered and rejected a course of action. *See id*. at 306. Because this claim fails as a matter of law, the district court did not abuse its discretion when it summarily denied the claim.

14

3.

Next, we consider the district court's summary denial of Davis's claim that trial counsel was ineffective for failing to call any witnesses on his behalf.[4] Trial strategy includes selecting evidence to present to the jury. *White v. State*, 711 N.W.2d 106, 111 (Minn. 2006). Decisions about which witnesses to call before the jury are generally questions of trial strategy in the discretion of trial counsel. *Jones*, 392 N.W.2d at 236. We conclude that Davis's trial counsel's decision not to call additional witnesses at Davis's trial falls within the realm of trial strategy, especially considering that Berry called several witnesses and, other than the woman in black, Davis does not identify any other potential witnesses. The district court did not abuse its discretion in summarily denying this claim because it failed as a matter of law.

4.

The district court also summarily denied Davis's claim that trial counsel provided ineffective assistance by refusing to let Davis testify even though Davis had expressed a desire to do so. We conclude that the district court did not abuse its discretion when it summarily denied this claim.

"[A] defendant's right to testify in his or her own defense is protected by both the 14th Amendment Due Process Clause of the Federal Constitution and Minnesota state law." *State v. Ihnot*, 575 N.W.2d 581, 587 (Minn. 1998). Only the defendant may waive this right. *State v. Rosillo*, 281 N.W.2d 877, 878 (Minn. 1979). Where a defendant is aware of

---

[4] While it is true that Davis's attorney called no witnesses on Davis's behalf, his codefendant called five witnesses and testified himself.

and understands his right to testify, "a claim that his attorneys' actions denied him the right to testify must fail 'absent some indication in the record that [his] lawyers coerced [him] into not testifying by applying undue pressure, using illegitimate means, or otherwise depriving [him] of [his] free will.' " *Andersen v. State*, 830 N.W.2d 1, 11 (Minn. 2013) (quoting *State v. Berkovitz*, 705 N.W.2d 399, 407 (Minn. 2005)). The defendant has the burden of proving he did not voluntarily waive his right to testify. *Id.* " 'Solemn declarations in open court carry a strong presumption of verity' and 'subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.' " *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Absent a finding to the contrary, we presume that the defendant waived the right to testify for the reasons stated on the record. *See Berkovitz*, 705 N.W.2d at 407–08, 408 n.1 (noting that we prefer the district court conduct a colloquy on the record).

In his postconviction petition, Davis alleged that he had the following conversation with counsel outside the courtroom:

> Before this trial was underway, petitioner had expressed to his defense team that he wanted to testify and would be uncomfortable if he did not. However, it was evince [sic] to petitioner that his defense team had a level of untrustworthiness regarding the petitoner's [sic] events on the days leading up to his arrest, plus the exposure of petitioner's past criminal history of a drug dealer. So, petitoner's [sic] defense team repeated that petitioner wouldn't be testifying because "the state has the burden to prove the case.

Sometime after this conversation took place, Davis personally waived his right to testify. On the record, Davis confirmed to the district court that he was exercising his choice not to testify, that the choice not to testify was his personal decision, and that he was not being

16

coerced into making his decision. At no point did Davis ever tell the district court that he wanted to testify.

Even if Davis proved by a preponderance of evidence at an evidentiary hearing that the alleged conversation with his attorney occurred, he would not be entitled to any relief. Davis's undisputed statements to the district court during the waiver colloquy, including his statement that no one was forcing him not to testify, demonstrate that at the point that he waived his right to testify, he was exercising independent judgment. Because this claim failed as a matter of law, the district court did not abuse its discretion when it summarily denied the claim.

C.

Finally, we turn to the district court's summary denial of Davis's claims of ineffective assistance of appellate counsel. In his postconviction petition, Davis alleged that appellate counsel provided ineffective assistance by failing to raise all the claims above and failing to "challenge the testimony" of Detective Johnson.

To be entitled to an evidentiary hearing on an ineffective assistance of appellate counsel claim, a defendant must allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong *Strickland* test. *Morrow v. State*, 886 N.W.2d 204, 206 (Minn. 2016). Under the first prong of the *Strickland* test, "[a]ppellate counsel has no duty to raise all possible issues, and may choose to present only the most meritorious claims to the court." *Zornes v. State*, 880 N.W.2d 363, 371 (Minn. 2016). There is a strong presumption that appellate counsel has exercised reasonable professional judgment in selecting the issues to raise on appeal. *Id.*

17

All the claims Davis alleges that appellate counsel should have raised on direct appeal fail on their merits for the reasons stated above. Consequently, as a matter of law, appellate counsel's failure to raise the claims did not fall below an objective standard of reasonableness.[5] We therefore conclude that the district court did not abuse its discretion when it denied the claims of ineffective assistance of appellate counsel without an evidentiary hearing.[6]

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.

---

[5] We observe that in the supplemental brief Davis filed on direct appeal, he claimed appellate counsel was ineffective for failing to raise a *Blakely* challenge to his sentence, and we determined that the claim had no merit. *Davis*, 982 N.W.2d at 729.

[6] Having concluded that all of Davis's claims fail on the merits as a matter of law, we need not consider if any claim would also be procedurally barred under *Knaffla*.