STATE of Minnesota, Respondent,

v.

Montrell Maurice WEBSTER,
Appellant.

A16-0894

Supreme Court of Minnesota.

Filed: May 10, 2017

See also 2016 WL 2897383.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Cheri A. Townsend, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

## OPINION

MCKEIG, Justice.

Montrell Maurice Webster was convicted of first-degree felony murder, Minn. Stat. § 609.185(a)(3) (2016), for the killing of Eulalio Gonzalez-Sanchez. On appeal, Webster challenges the sufficiency of the evidence and the district court's jury instructions. We affirm.

## FACTS

On September 21, 2014, Gonzalez-Sanchez was discovered shot to death on a sidewalk in northeast Minneapolis. After a police investigation, a grand jury indicted Webster for first-degree felony murder on an accomplice-liability theory. *See* Minn. Stat. § 609.185(a)(3); Minn. Stat. § 609.05 (2016). Webster pleaded not guilty and demanded a jury trial.

At trial, the State presented the following evidence. At 6:24 a.m. on September 21, 2014, Gonzalez-Sanchez was texting with his girlfriend as he walked home. At 6:25 a.m., L.C. and S.H. were awakened by the sound of three gunshots outside of their apartment. When L.C. looked outside, he saw a man's body lying on the sidewalk and immediately called 911. Police arrived to find Gonzalez-Sanchez, who had died from three gunshot wounds. Gonzalez-Sanchez's wallet was lying on the ground and his cell phone was missing. Surveillance video recorded at 6:29 a.m. at a nearby business showed a car driving away from the location where police found Gonzalez-Sanchez.

Two weeks later, the police stopped Jeremiah Blackwell while he was driving a car that appeared similar to the one in the video. During a search of the car, police discovered a .40-caliber handgun that, based on forensic testing, was consistent with the bullets that killed Gonzalez-Sanchez and the discharged casings recovered from the scene of the killing. Location data supplied by Blackwell's cell-phone usage and cell-tower records indicated that his phone was near the location of the murder in the early morning hours of September 21, 2014.

Blackwell directed police to Webster. Webster initially denied involvement in the killing. But he admitted that he had handled Blackwell's .40-caliber handgun 2 days before the murder. Webster claimed he could not remember where he had been on the day Gonzalez-Sanchez was killed.

The State filed murder charges against Blackwell, and Webster was called to testify at Blackwell's grand jury proceeding. While preparing for his testimony at the county attorney's office, Webster admitted that he was present when Gonzalez-Sanchez was killed. He agreed to talk to police and confessed to robbing and shooting Gonzalez-Sanchez.

As part of his confession, Webster told the police the following. On the morning of September 21, 2014, he and Blackwell had been smoking marijuana and were "money hungry." They were "riding around [northeast Minneapolis] looking for a victim to rob" in Blackwell's car when they spotted Gonzalez-Sanchez. Webster got out of the car with Blackwell's gun in his pocket and approached Gonzalez-Sanchez with the intention of robbing him. He said he had brought the gun along as "back up" because Gonzalez-Sanchez "was big." Gonzalez-Sanchez saw Webster approaching and "act[ed] like ... he was going to attack" him. When Webster pulled out the gun, Gonzalez-Sanchez surrendered, complying with Webster's order to lie on the ground. Webster took Gonzalez-Sanchez's wallet from his back pocket and looked through it, but found nothing worth taking. He claimed that he did not see or steal Gonzalez-Sanchez's cell phone.

Webster left the wallet on the ground and began walking away, scared and shaking. Gonzalez-Sanchez remained on the ground, and said something to Webster in Spanish. Webster said that this "really [made him] nervous." Webster testified that he had walked about 5 feet away when suddenly, "something ... forced [him] to stop" and "a demon jumped into [him]"—in other words, "something like a spirit came through [his] body." Webster then turned and shot Gonzalez-Sanchez three times. He described the incident as "a robbery that went wrong."

As Webster walked back toward the car after the shooting, Blackwell was walking in the opposite direction, toward Webster. When Webster told Blackwell that Gonzalez-Sanchez had nothing of value and that he had "left the wallet there," Blackwell jogged toward Gonzalez-Sanchez's body

and "double checked." Blackwell then returned to the car and the two men drove away.

After Webster was indicted for first-degree felony murder, he recanted his confession, telling the police that he was innocent and providing the names of four other men who may have killed Gonzalez-Sanchez. He said he only knew the details of the murder from conversations with these men. At trial, Webster's counsel argued that Webster had falsely confessed, conceding to the jury that "if what [Webster said] is true, . . . he's caused the death of someone while he's committing a robbery or attempted robbery," and "[t]hat's a felony murder." Counsel also said, "[t]here's no way to argue that the evidence doesn't show" that Gonzalez-Sanchez was killed "during an attempted robbery."

The district court provided the standard jury instructions for first-degree felony murder. 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.09 (6th ed. 2015). The instructions stated that felony murder required that "at the time of causing the death of [Gonzalez-Sanchez], the defendant was engaged in the act of committing or attempting to commit the crime of aggravated robbery." The jury found Webster guilty, and the district court sentenced him to life imprisonment with the possibility of release after 30 years. Webster appealed.

## ANALYSIS

### I.

■■■ Webster first argues that the State presented insufficient evidence to prove beyond a reasonable doubt that the killing of Gonzalez-Sanchez occurred while he was attempting to commit an aggravated robbery. We limit our review of the sufficiency of the evidence to ascertaining whether "the jury, giving due regard to the presumption of innocence and to the state's burden of proving guilt beyond a reasonable doubt, could reasonably have found the [appellant] guilty." *State v. Darris*, 648 N.W.2d 232, 236 (Minn. 2002). We adopt the view of the evidence "most favorable to the state," assuming the jury "believed the state's witnesses and disbelieved any contradictory evidence." *Id.*

■■■ Webster was guilty of first-degree felony murder if he intentionally murdered another person "while" committing or attempting to commit one of several enumerated felonies, including aggravated robbery.[1] Minn. Stat. § 609.185(a)(3). We have interpreted the word "while" to require that the felony and killing were "parts of one continuous transaction." *Bellcourt v. State*, 390 N.W.2d 269, 274 (Minn. 1986) (citation and internal quotation marks omitted). "Even if the underlying felony is complete before the homicide occurs, felony murder may still be applicable." *State v. Russell*, 503 N.W.2d 110, 113 (Minn. 1993). The felony-murder rule encompasses a killing "as long as the 'fatal wound' was inflicted during the 'chain of events' so that the requisite time, distance, and causal relationship between the felony and killing are established." *Id.* (citation omitted).

Here, the requisite time and distance between the attempted aggravated robbery and the killing are not at issue because Webster does not dispute on appeal that he killed Gonzalez-Sanchez at the same location where he had attempted to rob him at gunpoint minutes earlier. In-

1. Aggravated robbery includes "inflict[ing] bodily harm upon another" during the commission of a robbery while "armed with a dangerous weapon." Minn. Stat. § 609.245 (2016). Webster does not dispute that he attempted to commit an aggravated robbery.

stead, Webster argues that the State failed to establish the requisite causal relationship between the attempted robbery and the killing because after he completed the attempted robbery, "something like a spirit came through [his] body" and caused him to kill Gonzalez-Sanchez.

Webster's argument is unavailing. When viewed in the light most favorable to the State, the evidence establishes not only that the killing and attempted aggravated robbery occurred in the same continuous transaction,[2] but that the attempted robbery actually continued after the fatal shots were fired. As Webster walked back toward the car after the shooting, Blackwell was walking in the opposite direction toward Webster. When Webster told Blackwell that Gonzalez-Sanchez had nothing of value and that he had "left the wallet there," Blackwell jogged toward Gonzalez-Sanchez's body and "double checked." Blackwell's attempt to locate something of value on or about Gonzalez-Sanchez's body establishes beyond a reasonable doubt that the attempted robbery continued after the fatal shots were fired.[3] *See* Minn. Stat. § 609.05.

Accordingly, when viewed in the light most favorable to the verdict, the evidence establishes beyond a reasonable doubt that Webster murdered Gonzalez-Sanchez while attempting to commit an aggravated robbery.

**2.** *See State v. Heden,* 719 N.W.2d 689, 697 (Minn. 2006) (upholding a felony-murder conviction when the appellant sexually assaulted a child to stop her from crying, and then "lost control" and shook the child to death).

**3.** The State contends that the evidence supports a reasonable inference that Blackwell stole Gonzalez-Sanchez's cell phone, emphasizing that cell phone records show that Gonzalez-Sanchez was using his phone just before he was killed, and yet no phone was discovered at the scene of the crime when the police arrived minutes later. Having concluded that

II.

■ Webster next argues that the district court erred by failing to include language requiring a causal relationship between the killing and the attempted robbery in the jury instructions on first-degree felony murder. He acknowledges that he did not object to the jury instructions at trial.

■ When a defendant fails to object at trial, the forfeiture doctrine generally precludes appellate relief. *State v. Lilienthal,* 889 N.W.2d 780, 784 (Minn. 2017). Minnesota Rule of Criminal Procedure 31.02, however, creates an exception to the forfeiture doctrine that allows an appellate court to consider a forfeited error when the defendant establishes (1) an error, (2) that was plain, and (3) that affected the defendant's substantial rights. *Lilienthal,* 889 N.W.2d at 785. If we conclude that any of the requirements of the plain-error doctrine are not satisfied, we need not consider the others. *State v. Brown,* 815 N.W.2d 609, 620 (Minn. 2012). If the defendant establishes all three requirements, we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Lilienthal,* 889 N.W.2d at 785.

■ Here, we need not decide whether the district court erred in its jury instructions because we conclude that the

the evidence establishes beyond a reasonable doubt that Webster and Blackwell's *attempt* to rob Gonzalez-Sanchez was still in progress when the fatal shots were fired, we need not consider whether the circumstances proved in this case support a reasonable inference that Blackwell stole the phone and are inconsistent with any other reasonable inference. *See State v. Moore,* 846 N.W.2d 83, 88 (Minn. 2014) (explaining that we give no deference to the factfinder's choice between reasonable inferences).

alleged error was not plain. In determining whether an error is plain, we consider "the law in existence at the time of appellate review." *State v. Kelley*, 855 N.W.2d 269, 277 (Minn. 2014). An error is plain if it is "clear" or "obvious," which is typically established "if the error contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (citation omitted). We have previously held that the district court's failure to provide a specific explanation of an element was not plain error because we had not yet clearly required courts to explain the element in question with the specificity sought by the defendant on appeal. *State v. Milton*, 821 N.W.2d 789, 807 (Minn. 2012).

Here, the district court instructed the jurors that the fourth element of the felony-murder offense required that "at the time of causing the death of [Gonzalez-Sanchez], the defendant was engaged in the act of committing or attempting to commit the crime of aggravated robbery." This instruction is consistent with the standard jury instruction set forth in the Criminal Jury Instruction Guide. 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.09 (6th ed. 2015). Moreover, the instruction does not contravene existing case law. We have never held that a district court is required to include language requiring a causal relationship between the felony and the killing in the jury instructions on first-degree felony murder. Thus, like the error alleged in *Milton*, 821 N.W.2d at 807, we conclude that the alleged error in this case was not plain.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of conviction for first-degree felony murder.

Affirmed.