Wilkie initiated the online conversation by asking, "What are you doing tonight? Want to meet," and "Any pics." The decoy sent a "selfie" photograph depicting the head and torso of a youthful-looking male in a tank-style t-shirt. Wilkie responded, "Any nudes" and "Better pic sweetie," and sent the decoy two close-up photographs, one of an erect penis and the other of an anus with cloudy liquid on it. The decoy responded, "I'm 14... Is that ok?" Wilkie again sent two close-up photographs, one of an anus and the other of a man holding his erect penis. Wilkie asked the decoy if he was "really 14" and if he had "had sex before," and urged him repeatedly to send "nudes." Wilkie also asked the decoy if he was "horny." When the decoy asked Wilkie what he wanted to do the next day, Wilkie answered "F--k" and "Sex." The decoy answered, "Really!," and Wilkie responded, "Yes Do u." The decoy wrote "cool." Wilkie wrote again, "Do u." The decoy answered, "Sure!," and Wilkie wrote, "Ok Sweet." The two arranged to meet the next day, and the decoy gave Wilkie his cell phone number.
During their exchanges, Wilkie repeatedly expressed concern about getting caught.[1] He emphasized several times that he did not want to get into trouble, asking, "Can I believe you that you are not going to get me in trouble" and "If we meet its not going to be a trap Right bro." Wilkie also stated that he did not want the decoy to get into trouble and that he hated cops.
The next day, Wilkie and the decoy resumed their conversation on Grindr. They arranged a time to meet at the decoy's purported family home, and Wilkie reiterated that he wanted to "have fun." They also used their cell phones to have a live conversation. The decoy eventually sent Wilkie his home address, telling Wilkie that he could meet there because his mother would not be home from work until *40 later. Wilkie again expressed concern about getting in trouble, and the decoy responded that he would make sure his mom would not come home early. When Wilkie texted to indicate he had arrived at the address, the decoy responded, "K. Open doir Door." Wilkie walked up to the home and knocked on the door; police opened the door and arrested him.
Wilkie was charged with (1) attempted third-degree criminal sexual conduct in violation of Minn. Stat. §§ 609.17, subd. 1, .344, subd. 1(b); (2) solicitation of a child through electronic communication to engage in sexual conduct in violation of Minn. Stat. § 609.352, subd. 2a(1) (2016) ; and (3) distribution of material that describes sexual conduct to a child via electronic communication in violation of Minn. Stat. § 609.352, subd. 2a(3) (2016). Wilkie waived his right to a jury trial, and the district court found him guilty of all three offenses. The district court convicted and sentenced him to 35 months in prison on the third-degree criminal-sexual-conduct offense. Wilkie appeals.
ISSUE
Is the evidence sufficient to prove that Wilkie took a substantial step toward committing third-degree criminal sexual conduct?
ANALYSIS
When considering a sufficiency-of-the-evidence challenge, we carefully review the record "to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." Lapenotiere v. State , 916 N.W.2d 351, 360-61 (Minn. 2018) (quotation omitted). The same standard applies in actions tried to the district court. State v. Stevenson , 656 N.W.2d 235, 239 (Minn. 2003). We must assume that the trier of fact "believed the state's witnesses and disbelieved any contradictory evidence." State v. Webster , 894 N.W.2d 782, 785 (Minn. 2017).
A person commits third-degree criminal sexual conduct when he engages in "sexual penetration" with a complainant who is "at least 13 but less than 16 years of age and the actor is more than 24 months older than the complainant." Minn. Stat. § 609.344, subd. 1(b). "Sexual penetration" is defined to include "sexual intercourse, cunnilingus, fellatio, or anal intercourse; or ... any intrusion however slight into the genital or anal openings." Minn. Stat. § 609.341, subd. 12 (2016). A person attempts to commit a crime when, with intent, he "does an act which is a substantial step toward, and more than preparation for, the commission of the crime." Minn. Stat. § 609.17, subd. 1.
Conduct that constitutes a substantial step toward the commission of the crime is defined, not in the criminal statutes, but in the caselaw. In the seminal case of State v. Dumas , the supreme court stated that each case must be decided on its facts and declined to adopt a rule applicable to all cases. 118 Minn. 77, 136 N.W. 311, 314 (1912). But the Dumas court identified general principles courts should consider to determine whether a person's conduct constitutes a substantial step toward commission of a crime:
It may be stated ... as a general proposition that to constitute an attempt to commit a crime there must be an intent to commit it, followed by an overt act or acts tending, but failing, to accomplish it. The overt acts need not be such that, if not interrupted, they must result in the commission of the crime. They must, however, be something more than mere preparation, remote from the time and place of the intended crime; but if they are not thus remote, and are done with *41 the specific intent to commit the crime, and directly tend in some substantial degree to accomplish it, they are sufficient to warrant a conviction.
Id . Applying these principles, the Dumas court held that the defendant's acts of hiring others to start a fire, purchasing supplies and tools to accomplish this aim, and entering the building to be burned constituted a substantial step toward committing arson. Id . ; cf. United States v. Joyce , 693 F.2d 838, 841 (8th Cir. 1982) (recognizing that, under federal law, "whether conduct represents a substantial step toward the commission of the criminal design is ... a question of degree, necessarily depending on the factual circumstances peculiar to each case" (quotation omitted) ).
Wilkie concedes that the evidence is sufficient to prove that he intended to commit third-degree criminal sexual conduct. But he asserts that "none of [his] acts, alone, constituted a substantial step[,] and all of the acts taken together amount to nothing more than mere preparation." And he contrasts other cases involving sexual offenses, arguing the evidence is insufficient here because "there was not physical contact, indecent exposure, attack, or other act tending but failing to accomplish the offense." We begin our analysis by reviewing the caselaw Wilkie cites.
In State v. Peterson , the defendant argued that the evidence was insufficient to prove attempted third-degree criminal sexual conduct because his conduct "fell far short of being a substantial step toward" commission of the offense. 262 N.W.2d 706, 707 (Minn. 1978). Peterson encountered two teenagers at 1:30 a.m., threatened to hurt them "if they did not agree to have sexual intercourse with him," chased them, and was apprehended by police as he attempted to grab one of them. Id . On these facts, the supreme court summarily rejected Peterson's insufficiency-of-the-evidence argument, concluding that an attempt to commit third-degree criminal sexual conduct "begins with the initial attack ... and that need not involve a battery or an act of penetration." Id .
Peterson relied on State v. Johnson , which is also instructive. 243 Minn. 296, 67 N.W.2d 639 (1954).[2] In Johnson , the victim awoke to find a man standing by her bed; the man, who was partially nude, jumped on her, they struggled, she bit him and screamed, and he ran away. Id . at 640-41. While cross-examining the victim at trial, defense counsel elicited testimony that Johnson "did not engage in the last proximate acts prior to the consummation of sexual intercourse" because he did not kiss her, touch her private parts, or reach under the bedding to touch her. Id . at 642. On appeal, the supreme court rejected the defendant's suggestion that "the absence of the amorous manipulations" in the evidence rendered it insufficient to prove the defendant was guilty of attempted sexual intercourse. The court reiterated that "[t]he attempt ... does not require the last proximate act prior to the consummation of sexual intercourse[, and a]ny overt act beyond mere preparation and in furtherance of the intent is sufficient." Id . at 640.
Finally, in State v. Meemken , the defendant made numerous statements about his desire to have sexual contact with a nine-year-old victim, and he touched her upper thigh while he asked if he could do so. 597 N.W.2d 582, 586 (Minn. App. 1999), review *42 denied (Minn. Sept. 28, 1999).[3] We noted that conduct constituting an attempt to commit a sex crime need not be a crime in itself. Id . We concluded Meemken's act of touching the child, coupled with his repeated statements of intent to perpetrate a sex act upon the child, was "a substantial step toward the commission of the crime." Id . And we specifically rejected the defendant's argument that his conduct was, at most, "mere solicitation" of the child to engage in sexual conduct rather than a substantial step toward actually committing criminal sexual conduct. Id .
We acknowledge that the cases upon which Wilkie relies involve physical contact, words delivered in person, or an attack. But we are not convinced that these factual distinctions preclude a determination that Wilkie took a substantial step toward achieving his intended goal-sexual penetration of a juvenile. The advent of social media has abbreviated or eliminated some of the courtship rituals in our society, including how people initiate sexual relationships and arrange for sexual encounters. Actions that historically demonstrated a substantial step toward commission of a sex crime, such as preliminary physical contact, may no longer apply when social media is used to initiate the sexual encounter. But we are persuaded that other actions by a perpetrator in furtherance of a sexual offense may establish that a substantial step was taken. Such is the case here.
The evidence shows that Wilkie orchestrated a sexual encounter with a juvenile through extensive social media contacts and phone conversations; the only purpose of their in-person meeting was to consummate the sex act itself-for Wilkie to "f--k" the juvenile. Wilkie concedes that he intended to commit this crime. After exchanging sexually explicit messages and graphic photos, Wilkie arranged to meet with the decoy in private at a particular time and location. Wilkie obtained the decoy's address, drove to the home at the agreed-upon time, confirmed the two would be alone in the home, parked his car, walked up the steps, and knocked on the door. At that point, the only thing left to take place was sexual penetration. Applying the principles articulated in Dumas , we conclude that Wilkie's acts were not remote in time or location from the intended criminal sexual conduct and "directly tend[ed] in some substantial degree to accomplish" the crime. 136 N.W. at 314. As in Johnson , we are not persuaded that the absence of more typical "amorous manipulations," such as physical touch or in-person communication, defeats proof of an attempt offense. 67 N.W.2d at 642. And while we held in Meemken that the substantial steps leading up to a sexual offense need not be criminal in nature, we observe that Wilkie's conduct in initiating contact and grooming the decoy to engage in sexual penetration were, in themselves, criminal acts. 597 N.W.2d at 586. On this record, we conclude the evidence is sufficient to prove that Wilkie attempted to commit third-degree criminal sexual conduct.
DECISION
Wilkie's conduct, commencing with a social media contact involving explicit sexual innuendo, leading to an agreement to engage in sexual penetration, and culminating with a knock on the victim's door at an arranged time, is sufficient to prove that Wilkie did more than prepare to commit a crime. These circumstances establish that *43 he took a substantial step toward committing third-degree criminal sexual conduct.
Affirmed.

Spreigl evidence revealed that just three days earlier, Wilkie pleaded guilty to a felony prostitution offense based on his December 2015 agreement to pay $150 to have sex with a 17-year-old male. As in this case, Wilkie met the juvenile online, knew the juvenile's age, sought genitalia photos from the juvenile, and arranged to meet the juvenile in person to engage in sexual conduct.

Johnson involves a more serious criminal-sexual-conduct offense that included the use of force to commit "rape." The use of force is not an element of Wilkie's third-degree criminal-sexual-conduct offense, but Johnson is relevant to establish the type of evidence needed to prove an attempt to commit sexual penetration.

The second-degree criminal-sexual-conduct offense in Meemken was defined as the act of engaging in sexual contact with a child under the age of 13, with an age difference of more than 36 months between the actor and the child. Id . at 586.