*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0172**

State of Minnesota,
Respondent,

vs.

Curtis Dwayne Thurston,
Appellant.

**Filed December 4, 2023**
**Affirmed**
**Ede, Judge**

Hennepin County District Court
File No. 27-CR-21-11457

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

In this direct appeal from first- and fifth-degree criminal sexual conduct convictions, appellant argues that he is entitled to a new trial because the prosecutor committed prejudicial misconduct during closing argument by asserting that the victim was telling the

truth. Appellant further maintains that the district court abused its discretion by admitting a recording of the victim's out-of-court interview as a prior consistent statement and by excluding evidence of the victim's prior abuse and behavioral issues. In a pro se supplemental brief, appellant raises additional issues. Because all of appellant's contentions are unavailing, we affirm.

## FACTS

The convictions underlying this appeal concern sexual abuse of the victim A.S. by the appellant Curtis Dwayne Thurston that occurred when A.S. was 10 to 11 years old.

During a March 2021 videotaped forensic interview at CornerHouse Interagency Child Abuse Evaluation and Training Center, A.S. described abuse by Thurston. Thurston was a former neighbor and friend of A.S.'s mother. He briefly lived with A.S. and his mother in 2019 and 2020. The abuse included separate incidents of Thurston exposing his penis to A.S. and requiring A.S. to perform oral sex on Thurston in a Walmart parking lot.

Respondent State of Minnesota charged Thurston with first-degree criminal sexual conduct—penetration or contact with a person under 13 while the actor is 36 months older, in violation of Minnesota Statutes section 609.342, subdivision 1(a) (2018), and fifth-degree criminal sexual conduct—lewd exhibition with a person under 16 present, in violation of Minnesota Statutes section 609.3451, subdivision 1(2) (2018).

Prior to trial, Thurston filed a motion in limine seeking to exclude the recording of A.S.'s CornerHouse interview. At trial, the district court admitted the recorded interview, which the state offered as a prior consistent statement under Minnesota Rule of Evidence 801(d)(1)(B) (2022).

2

Thurston moved for the admission of evidence relating to A.S.'s prior physical and sexual abuse, as well as information regarding A.S.'s mental health and behavioral issues. The state objected and filed a motion in limine to exclude the evidence. The district court denied Thurston's motion and granted the state's motion, excluding the evidence per Minnesota Rules of Evidence 402, which provides that irrelevant evidence is inadmissible; 403, which allows the court to exclude relevant evidence on grounds of prejudice, confusion, or waste of time; 404, which generally prohibits the admission of character evidence to prove conduct; 412, the "rape-shield law,"[1] which governs the admissibility of past conduct evidence for victims of certain sex offenses; and 802, which is the rule against hearsay.

The jury heard testimony from several witnesses, including A.S. The state did not offer physical evidence or eyewitness testimony corroborating the abuse allegations. Much of the testimony concerned A.S.'s disclosure of the sexual abuse to medical professionals and law enforcement. Thurston testified and denied the allegations.

During closing arguments, the prosecutor directly addressed A.S.'s credibility, repeatedly asserting that a key task for the jury was deciding "if" they "believe" A.S. For example, at the outset and conclusion of the state's summation, the prosecutor argued:

> [I]f you listen to [A.S.] and, if you believe him, the State has proven this case beyond a reasonable doubt, and the defendant is guilty.
>
> . . . .

---

[1] *See also* Minn. Stat. § 609.347, subd. 3 (2022).

. . . And, if you listen and, if you believe him, the State has proven beyond a reasonable doubt that the defendant intentionally sexually penetrated [A.S.] and lewdly and willfully exposed his penis to [A.S.] when [A.S.] was under 13 between May 1st of 2019 and August 31st of 2020 while [A.S.] was living in Hennepin County. If you believe [A.S.], the defendant is guilty. Thank you.

Throughout the state's closing, the prosecutor addressed various factors that the district court had instructed the jury to consider in weighing witness credibility.[2] Regarding "frankness and sincerity[,]" the prosecutor argued that the jury "should . . . believe" A.S. because

when [A.S.] told you what happened to him, he gave you *an honest recollection of what his experience was. . . . I told him, "Tell the truth." And he said that's exactly what he did. He demonstrated for you how the defendant put his hand behind his head and pushed his head down. That's how you know he is telling the truth.* He did this really, really, hard thing when I'm sure he would have rather been doing anything else.

(Emphasis added.) Addressing "interest or lack thereof in the outcome of the case[,]" the prosecutor maintained that A.S.'s

*only interest was in coming here and telling you the truth.* He didn't want to do it. He's not getting anything out of it. He's a 13-year-old boy going into eighth grade. He doesn't stand to gain or lose anything depending on how this case is decided. He has no reason to make any of this up.

(Emphasis added.) Turning to "consistency[,]" the prosecutor pointed out that A.S. "has been consistent in his disclosure from the very start[,]" that "[h]e hasn't wavered on what happened to him[,]" and that "[h]is recounting of this experience in this Walmart parking

---

[2] Thurston did not object to the state's summation. The portions of the prosecutor's closing arguments that Thurston challenges on appeal are italicized in the text that follows.

lot has been the same because that's what happened" and "[b]ecause *that is the truth.*" (Emphasis added.) The prosecutor also contended that, when A.S. made his first disclosure of the abuse in February 2021, he answered a "[p]ointblank" and "[d]irect" question—whether he had ever been sexually abused—by giving "a direct answer[,]" i.e., "Yes." The prosecutor continued:

> . . . [T]hat direct question got a direct answer. A *direct and honest* answer from [A.S.] "Yes, I have been sexually abused." This makes sense. He's . . . 11 at this point. He's a few months away from being 12. He's [going to] give that direct answer.

(Emphasis added.)

The jury returned guilty verdicts on both counts of criminal sexual conduct. The district court sentenced Thurston to 144 months in prison.

Thurston appeals.

## DECISION

**I.**     **The prosecutor did not commit misconduct in closing argument.**

Thurston contends that the prosecutor committed prejudicial misconduct during closing argument by repeatedly telling the jury that A.S. was telling the truth. We disagree.

This court ordinarily reviews an unobjected-to error under the "plain error test[,]" under which "a criminal defendant must show that (1) there was an error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *State v. Myhre*, 875 N.W.2d 799, 804 (Minn. 2016) (citing *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)).

5

When a defendant does not object to alleged prosecutorial misconduct during closing arguments, "[w]e review the prosecutor's statements under a modified plain error analysis." *State v. Davis*, 982 N.W.2d 716, 726 (Minn. 2022). "Under this approach, the defendant must establish the existence of an error that was plain, and then the burden shifts to the State to establish that the plain error *did not* affect the defendant's substantial rights." *State v. Epps*, 964 N.W.2d 419, 423 (Minn. 2021) (citing *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). "Notably, a negative answer to any one of the three parts of the plain error doctrine may end our analysis and a defendant's quest for relief."[3] *Id.* (citing *State v. Jones*, 753 N.W.2d 677, 689 (Minn. 2008) (granting no relief for the defendant because the alleged error could not have been plain); *State v. Ihle*, 640 N.W.2d 910, 917-19 (Minn. 2002) (analyzing the underlying legal questions and finding no error) (other citation omitted)); *see also Davis*, 982 N.W.2d at 727 (analyzing only the first prong—whether there was an error—and holding that, "[b]ecause the prosecutor's statements [in closing argument] were not misconduct, . . . Davis is not entitled to relief on his prosecutorial misconduct claims"). "An error is plain if it is clear or obvious, which is typically established if the error contravenes case law, a rule, or a standard of conduct." *State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017) (quotation omitted).

---

[3] "If the first three prongs are satisfied, we must consider a fourth factor, 'whether [we] should address the error to ensure fairness and the integrity of the judicial proceedings.'" *Myhre*, 875 N.W.2d at 804-05 (quoting *Griller,* 583 N.W.2d at 740). As discussed below, because we conclude that there was no plain error here, we neither address whether the alleged error affected Thurston's substantial rights, nor whether failure to address the alleged error would cause the public to seriously question the fairness and integrity of our judicial system.

"When assessing alleged prosecutorial misconduct during a closing argument, we look to the closing argument as a whole, rather than to selected phrases and remarks." *State v. Graham*, 764 N.W.2d 340, 356 (Minn. 2009) (quotation omitted). "The State has a right to vigorously argue its case, including during closing arguments." *Davis*, 982 N.W.2d at 726 (quotation omitted). But "a prosecutor should not . . . vouch for the veracity of any particular evidence." *State v. McArthur*, 730 N.W.2d 44, 53 (Minn. 2007). Impermissible vouching occurs when the state implies a guarantee of a witness's truthfulness, refers to facts not in the record, or expresses a personal opinion about the credibility of the witness. *State v. Gail*, 713 N.W.2d 851, 866 (Minn. 2006). The prosecutor is not prohibited, however, "from arguing that particular witnesses were or were not credible." *State v. Everett*, 472 N.W.2d 864, 870 (Minn. 1991). "The use of the first-person pronoun 'I' indicates that the prosecutor has injected his or her personal opinion into an argument." *State v. Leutschaft*, 759 N.W.2d 414, 425 (Minn. App. 2009) (citation omitted). "The personal opinion rule is designed to prevent an attorney, whether a prosecutor or a defense attorney, from becoming an unsworn witness and otherwise personally attaching himself or herself to the cause which he or she represents." *Everett*, 472 N.W.2d at 870.

Here, the prosecutor's closing argument regarding A.S.'s credibility did not violate the "personal opinion rule" discussed in *Everett*, nor did it constitute impermissible vouching. Instead, the prosecutor discussed certain factors bearing on credibility that the district court had provided to the jury in its instructions. Thurston did not object to the district court's credibility instructions at trial and he does not challenge them on appeal. In summation, the prosecutor reviewed the trial evidence with the jury, focusing on aspects

7

of the record relating to the credibility factors set forth in the jury instructions. The prosecutor asked the jury to consider the evidence and credibility factors in evaluating the testimony of A.S. and Thurston, arguing that the jury should conclude A.S. was credible and Thurston was not.

Looking to the closing argument as a whole—rather than to the selected phrases and remarks Thurston questions on appeal—there is no clear or obvious error here. The summation did not "contravene[] case law, a rule, or a standard of conduct." *Webster*, 894 N.W.2d at 787. More specifically, the prosecutor did not use "I" statements to interject a personal opinion about witness credibility into the argument; she did not refer to facts outside the record; and she did not imply a guarantee of A.S.'s truthfulness. To the contrary, the prosecutor repeatedly reminded the jury that the outcome depended on the jury's assessment of "if" they "believe" A.S.

Because the prosecutor did not commit misconduct in closing argument, there was no plain error, and Thurston is not entitled to relief on his prosecutorial misconduct claim. *See Leutschaft*, 759 N.W.2d at 425 ("find[ing] no impropriety in the prosecutor's arguments[,]" where the prosecutor "called the jury's attention to T.B.'s testimony and suggested that it was plausible and that she testified honestly[,]" the prosecutor "did not interject personal opinion or intimate that he had any particular knowledge of her truthfulness[,]" and the prosecutor "invited the jury to make its assessment on the basis of what it heard and saw in the courtroom"); *see also Davis*, 982 N.W.2d at 727.[4]

---

[4] As noted above, because there are "negative answer[s]" to the first two "parts of the plain error doctrine[,]" that "end[s] our analysis[.]" *Epps*, 964 N.W.2d at 423.

8

**II. The district court did not abuse its discretion in its evidentiary rulings.**

Thurston also requests a new trial based on his argument that the district court abused its discretion by admitting (A) the CornerHouse interview and by excluding (B) evidence of A.S.'s prior abuse and (C) behavioral issues. The state responds that the CornerHouse interview was admissible as a prior consistent statement under Minnesota Rule of Evidence 801(d)(1)(B), and that the district court properly excluded the challenged evidence because it was irrelevant and unfairly prejudicial, and because it violated the rape-shield law and the rule against hearsay. We agree with the state.

"Evidentiary rulings rest within the sound discretion of the district court, and we will not reverse an evidentiary ruling absent a clear abuse of discretion." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). "The defendant has the burden to establish both that the district court abused its discretion and that the error was prejudicial." *State v. Miller*, 754 N.W.2d 686, 700 (Minn. 2008).

> **A. The district court did not abuse its discretion by admitting the CornerHouse interview.**

Hearsay is an out-of-court statement, made by a declarant, that is offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Generally, hearsay statements are inadmissible at trial, unless an exception exists. Minn. R. Evid. 802. Under rule 801(d)(1)(B), a statement is not hearsay if (1) the declarant testifies at the trial or hearing, (2) the declarant is subject to cross-examination concerning the statement, (3) the statement is consistent with the declarant's testimony, and (4) the statement is helpful to the trier of fact in evaluating the declarant's credibility as a witness. Before admitting a prior

9

consistent statement, the district court must first determine (1) that the declarant-witness's credibility was challenged, and (2) that the statement bolsters the declarant-witness's credibility with respect to that aspect of the declarant-witness's credibility that was challenged. *State v. Nunn*, 561 N.W.2d 902, 909 (Minn. 1997).

"The trial testimony and the prior statement need not be verbatim." *State v. Bakken*, 604 N.W.2d 106, 109 (Minn. App. 2000), *rev. denied* (Minn. Feb. 24, 2000). In fact, we have held that a prior statement that is reasonably consistent with the declarant-witness's trial testimony is admissible under rule 801(d)(1)(B). *See In re Welfare of K.A.S.*, 585 N.W.2d 71, 76 (Minn. App. 1998) (holding that a videotaped interview was admissible even though statements made therein were more detailed than the declarant-witness's trial testimony). But prior statements are not admissible "where inconsistencies directly affect the elements of the criminal charge[.]" *Bakken*, 604 N.W.2d at 110.

In the present matter, Thurston's counsel broadly challenged A.S.'s credibility throughout his opening statement at trial. Defense counsel told the jury that there was no physical evidence or eyewitness testimony and that the facts surrounding the alleged abuse were "inconsistent" due to A.S.'s prior statements. Although A.S.'s trial testimony and the CornerHouse interview were not verbatim, the prior statement was reasonably consistent with A.S.'s trial testimony. Any inconsistencies did not directly affect the elements of the crimes charged against Thurston.

More specifically, A.S. testified at trial that the abuse underlying Count I occurred at Walmart. Likewise, in the CornerHouse interview, A.S. told the interviewer that Thurston put his penis into A.S.'s mouth and the incident happened at Walmart. In both his

trial testimony and the CornerHouse interview, A.S. stated that he kicked Thurston in the groin during the Walmart incident. And in both A.S.'s trial testimony and the CornerHouse interview, A.S. said that Thurston made comments to A.S. about the size of his penis while Thurston was at A.S. and his mother's residence.

While A.S. made some inconsistent statements in the CornerHouse interview, those statements do not relate to the Walmart incident and referred to conduct that does not elevate the degree of either charge against Thurston. This distinguishes the present matter from *Bakken*, where we determined that the inconsistencies "were not minor discrepancies" but rather "significant because, if the jury believed the inconsistent videotaped statements, the criminal conduct would legally escalate from third-degree [criminal sexual conduct] to first-degree." *Bakken*, 604 N.W.2d at 110. By contrast, A.S.'s prior statements during the CornerHouse interview did nothing more than lend credence to A.S.'s trial testimony.

Because the CornerHouse interview was reasonably consistent with A.S.'s trial testimony and tended to bolster A.S.'s credibility with respect to an aspect of A.S.'s credibility that Thurston broadly challenged, we conclude that the district court did not abuse its discretion by admitting the interview pursuant to rule 801(d)(1)(B).

**B.      The district court did not abuse its discretion by excluding evidence of prior physical and sexual abuse.**

Generally, "[a]ll relevant evidence is admissible, except as otherwise provided" by law. Minn. R. Evid. 402. Evidence is relevant if it tends to make the existence of any fact or consequence more or less probable than it would be without the evidence. Minn. R. Evid. 401. But relevant evidence "may be excluded if its probative value is substantially

11

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Minn. R. Evid. 403. The district court is afforded "discretion in balancing the probative value of evidence against its prejudicial effect." *State v. Gassler*, 505 N.W.2d 62, 70 (Minn. 1993).

A victim's prior sexual conduct is generally inadmissible in a prosecution of criminal sexual conduct. *See* Minn. Stat. § 609.347, subd. 3; Minn. R. Evid. 412; *State v. Wenthe*, 865 N.W.2d 293, 306 (Minn. 2015). Under the rape-shield law, "evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order . . . ." Minn. R. Evid. 412(1); *see also* Minn. Stat. § 609.347, subd. 3. Prior sexual conduct includes prior allegations of sexual abuse. *See State v. Kobow*, 466 N.W.2d 747, 750 (Minn. App. 1991) (agreeing "with the trial court that the term 'sexual conduct' as used in Minn. Stat. § 609.347 includes 'allegations of sexual abuse'"), *rev. denied* (Minn. Apr. 18, 1991).

An exception to the rape-shield law applies if (1) the probative value of the evidence is not substantially outweighed by its inflammatory or prejudicial nature, and (2) either consent is a defense, or the prosecution's case includes evidence of semen, pregnancy, or disease at the time of the incident. Minn. R. Evid. 412(1). Furthermore, the district court may receive evidence of a victim's past sexual conduct where such evidence is constitutionally required. *See State v. Caswell*, 320 N.W.2d 417, 419 (Minn. 1982). And "[d]espite the prohibition of a rape-shield law or rule, a trial court has discretion to admit evidence tending to establish a source of knowledge of or familiarity with sexual matters

in circumstances where the jury otherwise would likely infer that the defendant was the source of the knowledge." *State v. Benedict*, 397 N.W.2d 337, 341 (Minn. 1986).

We have held that a district court's exclusion of prior false allegations of sexual abuse evidence violates a defendant's constitutional right to present a defense. *See State v. Goldenstein*, 505 N.W.2d 332, 340 (Minn. App. 1993), *rev. denied* (Minn. Oct. 19, 1993). But we have also held that a district court does not abuse its discretion by excluding testimony regarding a victim's allegations of prior sexual abuse when the defendant cannot not show that the prior allegations were false. *See Kobow*, 466 N.W.2d at 751.

Here, the district court did not abuse its discretion in determining that the probative value of evidence of prior physical and sexual abuse was substantially outweighed by its inflammatory or prejudicial nature. This case is unlike *Goldstein* and more analogous to *Kobow*. Thurston did not assert that A.S. had made false allegations of abuse in the past. Instead, Thurston maintains that the evidence of past sexual abuse was necessary for his defense at trial to prove a source of knowledge other than the alleged abuse by Thurston, and that such evidence would impeach A.S.'s credibility.

But A.S.'s source of knowledge was not a disputed issue in this case. A.S. was 13 at the time of the trial, and he was between the ages of 10 and 11 when the alleged abuse occurred. In *Benedict*, the supreme court held that the district court did not abuse its discretion by excluding source-of-knowledge evidence relating to a five-year-old, even after testimony from an expert witness "that the victim exhibited an unusual knowledge of sexual activities for someone his age and that it was the result of the boy having been given an education by somebody." 397 N.W.2d at 340-41. We likewise conclude Thurston's

13

source-of-knowledge argument does not support a determination that the district court abused its discretion in excluding evidence of past sexual abuse. Moreover, consent is not a defense to the charged offenses in this case and the prosecution's case did not include evidence of semen, pregnancy, or disease. Thus, evidence of the prior allegations or incidents of sexual abuse does not qualify for the rape-shield exception provided in rule 412(1).

Lastly, because A.S. testified at trial and Thurston had the opportunity to cross-examine him, there are no confrontation issues implicated by the district court's exclusion of the prior instances of sexual abuse that would otherwise indicate their admission was constitutionally required. Based on the record, the district court did not abuse its discretion in determining that the probative value of the evidence of prior physical and sexual abuse was not outweighed by its inflammatory or prejudicial nature. We therefore conclude that the district court did not abuse its discretion in excluding the evidence.

**C. The district court did not abuse its discretion by excluding evidence of mental health and behavioral issues.**

Thurston argues that the district court abused its discretion by excluding evidence of A.S.'s mental health and past behavioral issues, claiming that such evidence is relevant and admissible because it would have allowed the jury to evaluate A.S.'s credibility. Thurston had sought to impeach A.S. by establishing that A.S. accused Thurston of abuse to "distract from his own wrongdoing[.]"

As noted above, "[w]e review a district court's evidentiary rulings for abuse of discretion, even when, as here, the defendant claims that the exclusion of evidence deprived

14

him of his constitutional right to a meaningful opportunity to present a complete defense." *State v. Zumberge*, 888 N.W.2d 688, 694 (Minn. 2017).

In this case, the district court evaluated Thurston's request to admit evidence of A.S.'s mental health and behavioral issues at the start of trial. The court determined that such evidence was highly prejudicial because "[i]t paints the child as a bad and unreliable person." Thurston has not shown that the district court abused its discretion in its analysis of the potential prejudice. In addition, Thurston has failed to demonstrate how admission of this evidence tended to prove that A.S. was not credible. We conclude that the district court did not abuse its discretion in weighing the probative value of the evidence against its prejudicial impact and determining that it was not admissible.

## III. The alleged errors in Thurston's pro se supplemental brief are deemed waived.

Thurston submitted a pro se supplemental brief stating that he did not receive medication before picking the jury and that the jury did not hear from certain witnesses. Thurston's pro se brief contains no arguments or citations to legal authority. In cases where a party's "brief contains no argument or citation to legal authority in support of the allegations" of error, the supreme court has held that the alleged errors are "deem[ed] . . . waived." *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002). "Such arguments will not [be] considered unless prejudicial error is obvious on mere inspection." *State v. Montano*, 956 N.W.2d 643, 650-51 (Minn. 2021). On mere inspection, we discern no obvious prejudicial error. We therefore deem Thurston's pro se arguments waived and we decline to review them.

**Affirmed.**

15