*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1807**

State of Minnesota,
Respondent,

vs.

Daniel James Lewison,
Appellant.

**Filed December 11, 2023**
**Affirmed**
**Cochran, Judge**

Dodge County District Court
File No. 20-CR-21-309

Keith Ellison, Attorney General, Lisa Lodin Peralta, Assistant Attorney General, St. Paul, Minnesota; and

Paul Kiltinen, Dodge County Attorney, Mantorville, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

On appeal from his conviction for driving while impaired (DWI)—test refusal, appellant argues there was insufficient evidence to sustain his conviction because the state

failed to prove beyond a reasonable doubt that law enforcement had probable cause to believe that he was under the influence of a controlled substance while driving. We affirm.

**FACTS**

After appellant Daniel James Lewison refused to comply with a traffic stop and led three law enforcement officers on a lengthy pursuit, respondent State of Minnesota charged Lewison with fleeing a peace officer in a motor vehicle, felony DWI for refusal to submit to a chemical test (DWI—test refusal), first-degree DWI for operating a motor vehicle under the influence of alcohol, driving after cancellation, obstructing legal process, speeding, and littering. Prior to Lewison's jury trial, the state dismissed three of the counts. By the close of trial, the state had dismissed one more count. The jury found Lewison guilty of the remaining three counts: fleeing a peace officer, DWI—test refusal, and driving after cancellation.

At trial, the jury heard testimony from five law enforcement officers and Lewison. The testimony at trial established the following. In April 2021, an officer observed a red BMW drive past his squad car while the officer was performing traffic enforcement. The officer ran its plates and discovered that the car was registered to Lewison, whose driver's license was cancelled as inimical to public safety. The officer attempted to initiate a traffic stop, but Lewison continued driving and a 20-minute pursuit involving at least two additional officers ensued.

During the pursuit, three officers observed Lewison commit traffic violations that included failing to stop at stop signs, abruptly turning around on a highway, speeding, and

2

driving in the middle of the road in a manner that forced oncoming traffic onto the shoulder. The officers estimated that Lewison reached speeds of 80 to 100 miles per hour.

The pursuit ended shortly after Lewison led the officers down a rural road that provided access to a wind turbine. There, Lewison collided with two squad cars before the officers successfully contained his car. An officer then aimed his gun at Lewison's car and informed Lewison that he was under arrest. Lewison exited the car with his hands up, but disobeyed orders to stop and walked away from the officer. In response, another officer tackled Lewison to the ground. Lewison tensed up, preventing the officers from handcuffing him. The officers eventually "muscle[d] [Lewison's] hands behind his back" and handcuffed him. The state introduced exhibits containing squad-car video recordings of the pursuit and Lewison's arrest.

The three pursuing officers testified about Lewison's conduct during the arrest. The first officer testified that Lewison was "screaming obscenities," "saying nonsensical things," "unable to sit still," and "switch[ing] between states of calm and . . . erratic." The second officer testified that Lewison was sweating profusely, "very upset," yelling obscenities and other "incoherent talk," and had fluctuating moods. The third officer testified that Lewison "was very erratic, . . . very high-strung, disruptive when guys were trying to talk to him, [and] shouting obscenities."

Officers were able to conduct a preliminary breath test on the scene, which showed that Lewison had no alcohol in his system, but the officers could not conduct a field sobriety test due to Lewison's noncooperation. Still, each officer testified that they suspected that Lewison was under the influence of a controlled substance based on his

3

behavior. The officers testified that they could recognize when a driver was impaired by controlled substances through their training and experience.

A state trooper arrived after Lewison was detained in a squad car. The trooper observed that Lewison was "talking rapidly and loudly" and "very fidgety and constantly moving." The trooper also observed veins pulsating on Lewison's head and neck. The trooper attempted to take Lewison's pulse and conduct a field sobriety test, but Lewison again refused to comply. The trooper determined that "it was futile to continue to get [Lewison's] cooperation and examine him."

At trial, the trooper testified about his background in detecting drug impairment, which included state-patrol-academy training, a Drug Recognition Evaluator (DRE) certification, and more than twenty years of instructing other officers in DRE courses. The trooper also stated that he had arrested 221 drivers impaired by drugs over the course of his career. The district court then certified the trooper as an expert in drug recognition evaluation without objection from Lewison. The trooper testified that Lewison was "definitely showing some signs of stimulant use or impairment." The trooper did not believe that Lewison's behavior could have been caused solely by adrenaline because Lewison's agitation lingered for a "long time" and adrenaline rushes tend to subside after the inciting event ends.

After his arrest, Lewison was transported to a holding cell at the Dodge County Sherriff's Office. The trooper informed Lewison that he had a signed warrant authorizing collection of Lewison's blood or urine for controlled substance testing and attempted to

4

obtain a sample. The trooper instructed Lewison that failure to comply with the search warrant was a crime. Lewison refused to provide a sample.

Lewison testified that he did not drink alcohol or use controlled substances on the day of the pursuit, claiming that his actions were instead caused by adrenaline. Lewison also asserted that he did not stop because he "was scared of Minnesota law enforcement." Lewison testified that he was angry after he was tackled to the ground and handcuffed. Finally, Lewison testified that he did not submit to the warrant for a blood or urine test because he thought that passing the preliminary breath test was "good enough."

The jury found Lewison guilty of fleeing a peace officer, felony DWI—test refusal, and driving after cancellation. The district court sentenced Lewison to an executed sentence of 66 months.

Lewison appeals.

## DECISION

In his primary brief, Lewison challenges only his DWI—test refusal conviction. He bases his challenge on the sufficiency of the evidence. In a pro se supplemental brief, Lewison raises several other issues. We address his arguments in turn.

### I. The evidence was sufficient to support the jury's verdict.

Lewison argues that the state presented insufficient evidence to sustain his conviction of DWI—test refusal under Minnesota Statutes section 169A.20, subdivision 2 (2020), because the state failed to prove beyond a reasonable doubt that there was probable cause to believe he drove while under the influence of a controlled substance.

*Clarification of the DWI—Test Refusal Charge and Conviction*

Before analyzing Lewison's challenge to the sufficiency of the evidence on probable cause, we begin by clarifying the DWI—test refusal offense at issue in this case, as reflected by the record. Under section 169A.20, subdivision 2:

> It is a crime for any person to refuse to submit to a chemical test:
>
> (1) of the person's breath under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license); or
>
> (2) of the person's blood or urine as required by a search warrant under sections 171.177 and 626.04 to 626.18.

Minn. Stat. § 169A.20, subd. 2. The complaint in this case charged Lewison with violating **clause (1)** of subdivision 2, which makes it a crime to refuse a *breath* test, but the record reflects that the parties proceeded at trial under the assumption that Lewison was being prosecuted under **clause (2)** for refusing to submit to a *blood or urine* test. From the record, it is also clear that Lewison was convicted under clause (2). Indeed, the jury instructions on Lewison's DWI—test refusal count required the jury to find, among other facts, that (1) there was a warrant to test Lewison's blood or urine, (2) Lewison was instructed that refusing to comply with the warrant was a crime, and (3) Lewison refused to comply with the warrant. The instructions also required the jury to find beyond a reasonable doubt that law enforcement had probable cause to believe that Lewison was driving while under the influence of a controlled substance.

The distinction between clause (1) and clause (2) is important regarding the probable-cause element. Clause (1) specifically includes a probable-cause element by providing that it is a crime to refuse a breath test *under sections 169A.51 or 169A.52*, both

6

of which make probable cause of impaired driving a prerequisite for an officer to request a driver to submit to a breath test. *See* Minn. Stat. §§ 169A.20, subd. 2(1), 169A.51, subd. 1(b), 169A.52, subd. 1 (2020). But there is no similar reference to sections 169A.51 or 169A.52 in clause (2). *See* Minn. Stat. § 169A.20, subd. 2(2). Instead, under clause (2), it is a crime to refuse to submit to a blood or urine test "as required by a search warrant under sections 171.177 and 626.04 to 626.18." *Id.* Because a search warrant requires a finding of probable cause by a judge to support its issuance, the warrant requirement of the clause-(2) offense reasonably takes the place of the probable-cause element of the clause-(1) offense. *See* Minn. Stat. §§ 626.08 ("A search warrant cannot be issued but upon probable cause . . . ."), 169A.20, subd. 2(2) (incorporating section 626.08) (2020).[1] Therefore, it is not entirely clear that probable cause is an element of the test-refusal offense under clause (2), notwithstanding the jury instruction on probable cause in this case.

Nonetheless, the parties appear to agree in their respective briefs that probable cause *is* an element of the offense defined in clause (2). Given their agreement, we assume without deciding that probable cause is an element of the offense of refusing to submit to a blood or urine test under section 169A.20, subdivision 2(2). And for the reasons set forth

---

[1] Prior versions of section 169A.20 did not include a warrant requirement for blood or urine tests. *See e.g.*, Minn. Stat. § 169A.20, subd. 2 (2016). But in *Birchfield v. North Dakota*, the United States Supreme Court held that the Fourth Amendment does not permit warrantless blood tests incident to an arrest for drunk driving. 579 U.S. 438, 474-75 (2016). In response, the Minnesota Legislature amended the test-refusal statute to include clause (2), which incorporates the warrant requirement outlined in *Birchfield*. *See* 2017 Minn. Laws ch. 83, art. 2, § 2, at 351, 355 (codified at Minn. Stat. § 169A.20, subd. 2 (Supp. 2017)).

below, we conclude that the evidence is sufficient on this element to support Lewison's conviction.

*Sufficiency of the Evidence*

We begin our analysis of the sufficiency of the evidence by addressing the applicable standard of review. When considering a challenge to the sufficiency of the evidence, this court conducts "a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *Lapenotiere v. State*, 916 N.W.2d 351, 360-61 (Minn. 2018) (quotation omitted). We must assume that the jury "believed the state's witnesses and disbelieved any contradictory evidence." *State v. Webster*, 894 N.W.2d 782, 785 (Minn. 2017) (quotation omitted). A reviewing court "will not disturb a verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that the defendant was proven guilty of the offense charged." *State v. Flowers*, 788 N.W.2d 120, 133 (Minn. 2010) (quotation omitted).

We apply this standard of review so long as a conviction is adequately supported by direct evidence. *State v. Horst*, 880 N.W.2d 24, 39-40 (Minn. 2016). "[D]irect evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). Conversely, circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* at

599 (quotation omitted). If proof of an offense, or a single element of an offense, is based on circumstantial evidence alone, the reviewing court applies a heightened standard of review. *See State v. Fairbanks*, 842 N.W.2d 297, 307 (Minn. 2014).

Lewison argues that the state's evidence on the probable-cause element consisted of circumstantial evidence and therefore the heightened standard of review applies. We are not persuaded.

Determining the existence of probable cause is an objective inquiry. *State v. Koppi*, 798 N.W.2d 358, 363 (Minn. 2011). "[T]he probable cause standard asks whether the totality of the facts and circumstances known would lead a reasonable officer to entertain an honest and strong suspicion that the suspect has committed a crime." *Id.* (quotation omitted). To prove that the officers here had probable cause to believe that Lewison was driving while impaired, the state presented evidence of the officers' direct observations of Lewison's erratic driving and behavior. The state also introduced squad-car videos supporting the testimony about Lewison. And the officers testified that, based on their training and experience, Lewison's behavior was indicative of stimulant impairment. All of this evidence is direct evidence of the totality of the facts and circumstances known to the officers, and, if true, proves without inference that there was probable cause to believe Lewison was driving while impaired. *See State v. Olson*, 887 N.W.2d 692, 700 (Minn. App. 2016) (concluding that an officer's direct observations of indicia of impairment and testimony based on those observations are direct evidence of impairment). Accordingly, we conclude that the direct-evidence, not the circumstantial-evidence, standard of review applies to Lewison's challenge.

9

Applying the direct-evidence standard and viewing the evidence in the light most favorable to the verdict, we conclude the evidence at trial was sufficient to prove beyond a reasonable doubt that law enforcement had probable cause to believe that Lewison was driving while impaired. The record reflects that officers observed Lewison drive in the middle of a highway, abruptly turn around on a highway, and reach speeds between 80 and 100 miles per hour. Once Lewison was arrested, the officers observed him in a sweaty, agitated state, talking incoherently, and unable to sit still. They also observed Lewison fluctuating in his moods and unwilling to cooperate.[2] The state introduced squad-car videos that support these observations.

We have held that driving conduct and physical indicia similar to those exhibited by Lewison can support probable cause of impairment by a controlled substance. *See State v. Prax*, 686 N.W.2d 45, 48-49 (Minn. App. 2004) (affirming the district court's finding of probable cause where officers observed the defendant make illegal turns, drift over lane dividers, and exhibit indicia of intoxication including sweating and "anxious, fidgety behavior"), *rev. denied* (Minn. Dec. 14, 2004). Moreover, "[a]n officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence." *State v. Kier*, 678 N.W.2d 672, 678 (Minn. App. 2004) (quotation omitted).

_____

[2] An officer also testified that Lewison sang, "I'm high, I'm high, I'm high." Lewison testified that he merely said, "Hands held high, hands held high." Under the direct-evidence standard of review, we assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *Webster*, 894 N.W.2d at 785. We therefore accept the officer's testimony, but we need not rely on this disputed piece of evidence to reach our conclusion given the strength of the other evidence of Lewison's impairment.

Here, the officers observed multiple indicia of impairment, including sweating along with anxious, fidgety behavior. And the officers testified that, based on their training and experience, the multitude of erratic behaviors exhibited by Lewison indicated that he was impaired by a stimulant. Accordingly, the direct evidence was sufficient for the jury to conclude, beyond a reasonable doubt, that officers had probable cause to believe that Lewison was driving while under the influence of a controlled substance. Therefore, Lewison's sufficiency-of-the-evidence challenge to his DWI—test refusal conviction does not warrant reversal.

## II. Lewison's Supplemental Arguments

Lewison raises four arguments in a supplemental brief: (1) there was no probable cause to initiate a traffic stop; (2) his initial appearance was held virtually from the wrong jurisdiction; (3) the prosecutor did not appear in person at the "rule 8 hearing" and instead was allowed "to speak from a loud speaker with no face recognition;" and (4) the district court signed "a fraudulent warrant" authorizing Lewison's extradition from Mitchell County, Iowa. Lewison provides no citations to legal authority or the record to support any of his supplemental arguments. "Claims in a . . . supplemental brief that are unsupported by either arguments or citation to legal authority are forfeited," and "will not [be] considered unless prejudicial error is obvious on mere inspection." *State v. Montano*, 956 N.W.2d 643, 650-51 (Minn. 2021) (quotation omitted); *see also Brooks v. State*, 897 N.W.2d 811, 818-19 (Minn. App. 2017) (declining to consider arguments "based on mere assertion and not supported by legal authority or argument"). On mere inspection,

11

we discern no obvious prejudicial error.  Therefore, Lewison's supplemental claims are forfeited, and we decline to review them.

**Affirmed.**